ROBERT S. TRUMBULL v. VIOLA TRUMBULL.

FILED FEBRUARY 17, 1904. No. 13,384.

1. Guardian and Ward. There is a well defined distinction between the privileges accorded to parents and guardians in their communications with children and wards, with reference to their domestic relations, and that which exists between strangers.

2. **Advice by Guardian.** Where advice is given by a guardian, which leads to a separation by the ward from husband or wife, the presumption is that the advice was given in good faith; but, where such advice is given by a stranger, the presumption is otherwise.

3. **Alienation of Affections: ACTION: DEFENSE.** In a suit for damages for alienation of affections, it is a good defense, on the part of a guardian, that he advised the ward from honest motives in a sincere belief that the advice given was for the moral and social good of the ward.

4. **Instructions.** Instructions examined, and *held* prejudicial.

5. **Error.** Paragraphs of a petition, which have been struck out on motion, should not be submitted to the inspection of a jury.

ERROR to the district court for Kearney county: ED L. ADAMS, JUDGE. *Reversed.*

*Thomas Darnell, L. C. Paulson* and *George E. Hager,* for plaintiff in error.

*J. C. Stevens* and *M. D. King, contra.*

OLDHAM, C.

This is an action for damages brought by the plaintiff in the court below against the defendant, her brother-in-law, for alienating the affections of her husband. The material facts underlying the controversy appear to be that plaintiff's husband, Oscar Trumbull, was a minor between 19 and 20 years of age at the time of his marriage. That, before the marriage, plaintiff and her husband each resided in the village of Minden, Nebraska. Plaintiff was of the age of 26 years, and had been engaged in the millinery business for several years in the village of Minden. Her husband was working for the defendant, Robert S. Trumbull, his brother and guardian, in Minden, when he became acquainted with plaintiff. In October, 1901, plaintiff removed to the city of Hastings, Nebraska, and was employed as a saleslady in a dry-goods store at that place. Shortly after her removal to Hastings, Oscar Trumbull went there, and married plaintiff at that place on the 14th

day of October, 1901. The marriage license was procured without the consent of the guardian of Oscar Trumbull, on his statement in his application for a license that he was 23 years of age. After the marriage, plaintiff and her husband began housekeeping, and lived together as husband and wife, at Hastings, until the month of April, 1902, when the husband abandoned plaintiff, volunteered in the army of the United States, and has since refused to live with plaintiff. In the months of December, 1901, and January, 1902, the defendant, Robert S. Trumbull, wrote letters to his brother, at Hastings, urging him to abandon plaintiff and, according to plaintiff's testimony, persisted in writing similar letters, until he finally persuaded his brother to abandon plaintiff. Defendant, by way of answer to plaintiff's petition, alleges that he was the guardian and brother of plaintiff's husband, and admits that he wrote letters to his brother in the months of December, 1901, and January, 1902, urging him to abandon plaintiff, but alleges, in defense of his conduct, that at the time he wrote these letters he had no knowledge of the marriage of his brother to plaintiff, but believed he was living with her in a state of fornication; that he had reason to believe, and did believe, that plaintiff was an unchaste woman, and that she had been criminally intimate with his brother during her residence in Minden, and that he acted in good faith in advising his brother to abandon plaintiff. That, when he finally learned of the marriage of his brother to the plaintiff, he did not seek to persuade or induce his brother to abandon his wife. Defendant introduced testimony tending to support the theory of his answer, while the testimony of the plaintiff tended to show that defendant knew of the marriage before any of the communications were written to his brother. At the trial in the court below, the jury returned a verdict for plaintiff for $1,000 damages. There was a judgment on the verdict, and defendant brings error to this court.

Numerous allegations of error are charged in the proceedings of the lower court, in the briefs of plaintiff in

error, only one of which it will be necessary for us to ex-
amine, in view of the conclusion we shall presently reach.
The instructions given by the court appear to have all pro-
ceeded upon the theory that defendant, as guardian and
brother of plaintiff's husband, had no right to advise and
counsel with his brother and ward concerning his mar-
riage, if he knew he was married, or even if he did not
know such fact. Evidently regarding this as the law gov-
erning the case, the learned trial judge, in paragraph 9 of
the instructions given on his own motion, told the
jury:

"If you find the plaintiff was married to the defendant's
brother, as alleged, and you further find that the defendant
had no knowledge of the fact that they were married, then,
if the plaintiff had been unchaste, and the defendant, be-
lieving the same, did that or anything which caused his
brother to abandon the plaintiff and alienate his affections
from her, such fact—that she had been unchaste, and not a
fit woman to become a member of defendant's family—
would not be a defense to plaintiff's cause of action; but
the fact that she was of such character, and the defendant
did not know that they were married, should be taken into
consideration by you in determining the amount of dam-
ages, if any, plaintiff has sustained."

In view of this instruction, and paragraphs 6 and 8 of
the instructions immediately preceding it, the court prac-
tically directed the jury to find a verdict for plaintiff, and
to only consider the evidence relied upon by defendant in
mitigation of damages.

The court evidently regarded the defendant as a mere
stranger interfering with the marital relations existing
between plaintiff and her husband, and applied to him
the most rigid rules ever enforced against intermeddlers
in household affairs. In this we think the court erred.
The relationship existing between parent and child, and
guardian and ward, is of such a character as to warrant
the parent or guardian to consult and advise the child or
ward, in good faith and with proper motives, even in re-

spect to their marital relations, and no cause of action will lie against the parent or guardian for such advice, unless recklessly and maliciously given.

There is a well defined distinction, recognized by the authorities, between the privileges of parents and guardians in their communications with children and wards, with reference to their domestic relations, and that which exists between strangers, particularly those of the opposite sex, in advising in these matters. Where advice is given by a parent or guardian, which leads to a separation by the child or ward from husband or wife, the presumption is that the advice was given in good faith; but, where such advice is given by a stranger, the presumption is otherwise; and, when an action for alienation of affections is brought against a parent or guardian, the gist of the action is the good faith in which the advice is given. Consequently, it is a good defense on the part of the parent or guardian to an action of this nature that they advise the child or ward from honest motives, in a sincere belief that the advice given was for the moral and social good of the child or ward. *Reed v. Reed,* 6 Ind. App. 316; *Hutcheson v. Peck,* 5 Johns. (N. Y.) *196; *Bennett v. Smith,* 21 Barb. (N. Y.) 439; *Glass v. Bennett,* 89 Tenn. 478.

As this case must be reversed for errors in instructions given, we think it might be well to suggest that an amended petition be filed by plaintiff on a new trial, in which the allegations of the original petition that were struck out on motion of the defendant at the former trial are eliminated. This suggestion is made in view of the fact that complaint is made by defendant that the petition, with all the original allegations, was sent to the jury, while deliberating, with the paragraphs that were excluded simply marked "out" on the margin. Paragraphs of petitions which have been stricken out on motion should not, under any circumstances, be submitted to the inspection of the jury.

We therefore recommend that the judgment of the dis-

trict court be reversed and the cause remanded for further proceedings.

AMES and HASTINGS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED.