Ruhs v. Ruhs.

---

MARY RUHS, APPELLEE, V. ALBERT RUHS, APPELLANT.

FILED FEBRUARY 10, 1921. No. 21147.

1. **Husband and Wife: ALIENATION OF AFFECTIONS: INSTRUCTIONS.** In an action for damages by a wife against her father-in-law for alienating the affections of her husband, it is not error to fail to instruct the jury that parental advice, honestly given, without malice, and with the intention of benefiting the son, is a defense, when parental advice is not pleaded as a defense nor proved on the trial.

2. **Instructions** which, when construed as a whole, correctly state the law, and are not misleading, will be held sufficient, even though a single paragraph thereof standing alone may not be entirely accurate.

3. **Evidence** examined, the substance of which is set out in the opinion and *held* sufficient to support the verdict.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*C. R. Stasenka* and *A. H. Byrum,* for appellant.

*W. P. Cowan* and *W. H. Miller, contra.*

DAY, J.

The plaintiff recovered a judgment for $8,000 against the defendant, her father-in-law, in an action for damages for alienating the affections of the plaintiff's husband, Ernest Ruhs. Defendant has appealed.

The petition is in the usual form of such actions, and charges in substance that, soon after the marriage of the plaintiff and Ernest Ruhs, the defendant, with the intention of causing a separation between the plaintiff and her

husband, knowingly and falsely upon various occasions represented to the said Ernest Ruhs that the plaintiff had been guilty of illicit conduct with other men; that by his oft-repeated reference to the misconduct of the plaintiff he finally induced the said Ernest Ruhs to abandon the plaintiff and to commence an action for divorce against her, alleging adultery as a ground therefor. The petition avers that, prior to the unwarranted interference of the defendant, the plaintiff enjoyed the love, confidence and respect of her husband, and that he provided a suitable home and maintenance for herself and two children, the issue of the marriage. The answer is a general denial.

A number of errors are relied upon as a basis for a reversal of the judgment, the principal ones of which will be noted. The principal error assigned is that the evidence does not support the verdict. We cannot, within the limits which should be given to an opinion, review the entire testimony, and must content ourselves with a very brief summary of the outstanding facts. At the outset we may say that there was a flat contradiction between the plaintiff's and defendant's testimony upon every material fact.

On behalf of the plaintiff the testimony tended to show that plaintiff and Ernest Ruhs were married on February 6, 1909, and that immediately thereafter the young couple commenced living on a farm belonging to the defendant, the son working the farm on shares; that defendant and his wife were often at the home of the young people; that soon after the marriage the defendant stated to the plaintiff, in the presence of her husband, that the plaintiff was in "trouble" by another man, and later, when the child was born, stated that he did not want his son to support other men's kids; that defendant persisted in telling that she was with child before her marriage, notwithstanding the child was born more than 10 months after the marriage; that after living for about six years on the farm, during which time two children were born, the plaintiff and her husband removed to Stanton county, and

later to Norfolk, Nebraska, where the plaintiff's husband secured employment on the railroad; that plaintiff and her husband lived happily together and that the husband provided suitable maintenance for the plaintiff and her children and had a genuine affection and regard for them; that, with the consent of her husband, the plaintiff and her children made a trip to Franklin county to vist her relatives and friends, the husband securing round-trip transportation for them; that at the instance of her husband the plaintiff and the children visited the defendant's family; that while in Franklin county she also visited the family of Jurgen's, a son-in-law of the defendant; that while the plaintiff was at Jurgen's the defendant, in company with another son-in-law, went to Norfolk and told his son, Ernest, that it was rumored that the plaintiff was carrying on with other men. The testimony with respect to what the defendant told his son is brought out on the examination of the defendant, his son, and his son-in-law. In this behalf the defendant says: I went up after him and "told him what was the reports that was going on around here, and I wanted him to come out and investigate for himself;" that she was going around with other men; I went up and told him, but did not assume to advise him in any way.

Ernest Ruhs' testimony in behalf of the defendant stated that at the time his wife left she expected to return, and that the relationship between them was pleasant. He stated: My father "told me about this trouble." He asked me if "we were parted or divorced, and it just liked to knock me down at first." He said: "You can come up here and look the thing over for yourself." George Grotfeld was present, and "he said the same thing, that I didn't have to take their word for it at all; that I could come over here and see for myself."

On the same day the parties started from Norfolk. Arriving at Kearney they at once took an automobile for Hildreth, arriving there in the evening. They then drove to the home of Henry Wessel, an uncle of plaintiff, where

the plaintiff's husband was told of what was reported to be going on. They then drove to Bloomington, the county-seat of Franklin county, Wessel accompanying the defendant and his son. Arriving there at 2 o'clock in the morning, they called at the sheriff's house. The sheriff said he first talked with the son; that later the defendant came up on the porch and stated that plaintiff had been running around with that Louis Vannier late of nights; that they planned to take the train the next morning early, and that they wanted to arrest her before they got out on the early morning train. The sheriff stated that he did not want to go without a complaint, but finally told Albert, the defendant, that, "I would go if he would file a complaint after I got them," and he said he would file a criminal complaint against them. The parties then went to the house of Vannier and took him into custody, and from there drove to Jurgen's, where the plaintiff was staying, arriving there just at sunrise. The sheriff called the plaintiff out and told her what his errand was. The plaintiff saw her husband out near the car, and called him to come to her, and he replied: "I am done with you." The parties were taken to town and released from custody late in the afternoon of the same day. A few weeks later the plaintiff's husband commenced an action for divorce, charging the plaintiff with adultery.

The defendant denied practically all of the charges made against him. He admitted going to Norfolk and telling his son of the rumors of his wife's conduct. He denied having anything to do with the arrest of the plaintiff, except that he was along as the driver of the car, and that the action taken by his son was upon the son's own initiative; that the son got the information upon which he acted from Wessel.

Under this state of the record it seems to us that the question presented was one for the jury to pass upon, and that the evidence and the fair inferences therefrom are sufficient to support the verdict.

Complaint is made of the giving of the instruction No. 4, which reads as follows:

"The court instructs you, gentlemen of the jury, that if you find from the evidence that Ernest Ruhs has abandoned the plaintiff, his wife, and you find that the conduct of the defendant, Albert Ruhs, was the controlling cause which induced Ernest Ruhs, plaintiff's husband, to leave the plaintiff, and if you are satisfied from the evidence that but for the conduct of the defendant Ernest Ruhs would not have left the plaintiff, his wife, then the plaintiff is entitled to recover in this action, although you may find from the evidence that there might have been causes contributing to the same result."

The argument is made that the instruction is misleading, in that it fails to state that the facts to be found by the jury must be established by a "preponderance of the evidence." Were this the only instruction given, it might well be subject to the criticism directed against it. But it is well established that in passing upon the correctness of instructions they must be considered, as a whole, and if, when so considered, the law is correctly stated it is all that is required.

By another instruction the jury were told that before the plaintiff "would be entitled to recover a verdict at your hands, she must convince you by a preponderance of the evidence of the truth of the material allegations of her petition," and among the material allegations to be found by the jury was: "That the defendant, Albert Ruhs, charged the plaintiff in the presence of her husband with being a bad woman, and having improper relations with other men, and by such charges induced Ernest Ruhs, the husband of plaintiff, to abandon her and her said children and to apply for a divorce." Considering the instructions as a whole, we do not believe the jury were misled in the matter complained of. We have examined the whole charge, and it is as favorable to the defendant as he had the right to ask.

It is argued that there is no proof that Ernest Ruhs has abandoned the plaintiff. We are unable to agree with this contention. His first words in response to her appeal for help at the time the sheriff was placing her under arrest, "I am done with you," followed by action, for divorce and his failure to voluntarily contribute to her support is sufficient proof of abandonment.

But it is urged that the court erred in failing to incorporate in its instructions the idea that it was the privilege of the father to in good faith advise his son with respect to his domestic happiness—citing *Melcher v. Melcher*, 102 Neb. 790, and *Trumbull v. Trumbull*, 71 Neb. 186. Undoubtedly it is a good defense on the part of a parent or guardian, in an action of this nature, to show that advice given was with honest motives and a sincere belief that it was for the moral and social welfare of the child, or ward; but, to be available, both the relationship as well as the good motives must be pleaded as a defense. In *Rath v. Rath*, 2 Neb. (Unof.) 600, it is said: "In an action by a wife, against her father-in-law for alienating the affections of her husband and causing him to abandon her, parental advice, honestly given, without malice, and with the intention of benefiting the son, is a defense; but, where such advice is not pleaded nor proven at the trial, the court did not err in refusing to give instructions based on that theory." To the same effect, *Harvey v. Harvey*, 75 Neb. 557. In the case at bar the plea was a general denial, and the defendant's proof tended to show that he took no part in influencing his son in the action taken by him.

Numerous errors are complained of in the ruling of the court in limiting the cross-examination on the part of the defendant. In some of the instances related we are inclined to the view that the line was too tightly drawn; on the other hand, we do not believe there was any substantial error to the prejudice of the defendant's rights in the rulings of the court.

It is argued that the plaintiff has not sustained her case by the preponderance of the testimony. It is quite true that on some of the material matters the plaintiff stands alone against the denial of her father-in-law, her mother-in-law, and her husband; but it must be remembered that preponderance of the testimony does not necessarily mean the greater number of witnesses testifying to a given statement of facts, but rather to the weight of the evidence; that which, upon the whole, produces the stronger impression upon the mind of the trier of fact, and is more convincing as to its truth when weighed against the evidence in opposition thereto.

Other errors are discussed in the brief, which need not be considered further than to say that they have been examined and in our view are not sufficient to a reversal of the case.

There is no prejudicial error in the record which we have been able to discover. The judgment is therefore

AFFIRMED.