[No. 21002. Department One. April 14, 1928.]

ANNIE ALLARD, *Respondent,* v. LILLIE A. LA PLAIN, *Appellant.*[1]

[1] JUDGMENT (258)— FOREIGN JUDGMENTS — CONCLUSIVENESS — RE-CITALS. Recitals in the judgment record of a sister state, show-ing the acquisition of jurisdiction of the person of the defend-ant and an issue of wilful and malicious injury to plaintiff, are part of the court's judgment, although they preceded the words "It is therefore considered and ordered" that the plaintiff re-cover judgment, etc.

[2] EVIDENCE (123)—JUDGMENTS (259)—FOREIGN JUDGMENTS—EVI-DENCE—AUTHENTICATION—REQUISITES — PRESUMPTIONS. It can-not be presumed that the laws of a sister state require a judg-ment to be authenticated by the judge, as provided in this state by Rem. Comp. Stat., § 431, where the judgment record of such sister state is certified by the clerk "as a true and correct transcript of the record and judgment" on file in his office, and the presiding judge certifies that the clerk's attestation is in due form according to the laws of such state, and entitled to full faith and credit.

[3] BANKRUPTCY (14)—LIABILITIES DISCHARGED—JUDGMENT FOR WIL-FUL INJURIES. A judgment for damages for wilfully and malici-ously alienating the affections of a husband, is one that is not dischargeable in bankruptcy, under U. S. Code Title 11, § 35, excepting liabilities "for wilful and malicious injuries to the person or property of another."

[4] BANKRUPTCY (14) — HUSBAND AND WIFE (120) — DEBTS DIS-CHARGEABLE—ALIENATION OF AFFECTIONS—MALICE — EVIDENCE — PRESUMPTIONS. The burden of proving malice in an action for alienation of a husband's affections resting upon the plaintiff in case of near relationship, and the burden of disproving it resting upon the defendant in the case of alienation by a stranger, instructions to the jury to the effect that it was not necessary to show express malice to the extent of wicked hatred, but that the wrongful act will give by implication all the malice necessary, does not tend to prove that malice was not an issue in the case, or that the judgment rendered was not for wilful injury to the person and upon a liability not dischargeable in bankruptcy.

[1]Reported in 266 Pac. 688.

[5] BANKRUPTCY (14)—DEBTS DISCHARGEABLE—WILFUL INJURIES—
WAIVER BY CLAIM. The filing of a claim in bankruptcy on a
judgment recovered for wilful injury to the person does not
waive the provision of the Federal law exempting such liabilities
from discharge by the decree in bankruptcy.

[6] JUDGMENT (254, 258)—FOREIGN JUDGMENT—OPERATIVE IN OTHER
STATES—FULL FAITH AND CREDIT—CONCLUSIVENESS. Fraud in
securing a judgment in a sister state by false testimony by
which defendant was surprised, and unable to disprove by evi-
dence since discovered, and made a ground for opening the
judgment on application within three years, does not render
the judgment void, or deprive it of the benefit of the full faith
and credit clause of the Federal constitution, in the absence of
any application made to vacate it within the three-year period.

[7] SAME (254). Error in law in an action in a sister state cannot
be made the basis of a charge of fraud invalidating the judg-
ment, where it appears that there was no want of jurisdiction
over the person of the defendant.

Appeal from a judgment of the superior court for
Whatcom county, Hardin, J., entered April 9, 1927,
upon the verdict of jury rendered in favor of the plain-
tiff, by direction of the court in an action upon a for-
eign judgment. Affirmed.

*R. W. Greene* and *Sather & Livesey,* for appellant.
*F. M. Hamilton* and *H. C. Thompson,* for respondent.

PARKER, J.—On February 16, 1926, the plaintiff, Mrs.
Allard, commenced this action in the superior court
for Whatcom county, seeking recovery upon a judg-
ment rendered in her favor against the defendant,
Mrs. LaPlain, by the supreme judicial court of the
state of Maine, for Sagadahoc county. The complaint
does not allege the nature of the claim upon which the
judgment was rendered by the Maine court, but sub-
sequent pleadings render it plain that the plaintiff
sought recovery upon the theory that the judgment
of the Maine court was rendered for damages suffered
by her as the result of the defendant having wilfully

and maliciously alienated the affections of her husband, who was a brother of the defendant. This particular issue came into the case by the defendant pleading, as an affirmative defense, her bankruptcy proceeding pending in the United States court for this district and the plaintiff's reply to that defense; thus bringing into the case the question, among others, of whether or not the liability evidenced by the judgment of the Maine court is a liability dischargeable in bankruptcy.

This action proceeded to trial in the superior court, sitting with a jury. At the conclusion of the introduction of all of the evidence, counsel for the defendant moved for a judgment of dismissal, insisting that the court should so dispose of the case as a matter of law. This motion was by the court overruled. Counsel for the plaintiff then moved for an instructed verdict awarding to her recovery for the balance due upon the judgment of the Maine court, insisting that the court should so dispose of the case as a matter of law. This motion was granted, and on April 9, 1927, final judgment was rendered accordingly, awarding to the plaintiff recovery against the defendant in the sum of $7,585.73, the balance due upon the Maine judgment, that being the balance due thereon after deducting the amount the plaintiff admitted having been paid thereon, there being no evidence of any greater amount having been paid thereon. From this disposition of the case by the superior court, the defendant has appealed to this court.

In view of the contentions made in behalf of appellant, Mrs. LaPlain, it seems necessary for us to here quote the entire document introduced in evidence in behalf of respondent, Mrs. Allard, as evidencing the judgment of the Maine court here sued upon. That document, including its certification, reads as follows:

"STATE OF MAINE.

"Sagadahoc, ss.                    Supreme Judicial Court

"At a term of the Supreme Judicial Court, begun and held at Bath, within and for the County of Sagadahoc, on the third Tuesday of October, anno Domini one thousand nine hundred and twenty-five, being the twentieth day of said month.

"THE HONORABLE SCOTT WILSON, CHIEF JUSTICE PRESIDING.

4127

ANNIE ALLARD OF RICHMOND, in the County of Sagadahoc and State of Maine, PLAINTIFF against LILLIE A. LAPLAIN of LEWISTON, in the County of Androscoggin and State of Maine, DEFENDANT.

"In a plea of the case for that the plaintiff, on the twenty-ninth day of November, 1916, at Richmond, in the State of Maine, was lawfully married to Bert Allard of said Richmond, who is the brother of the defendant; that at all times since the said marriage the said Bert Allard and the plaintiff have been and now are husband and wife; that by reason of said marriage the plaintiff became and was entitled to the support, company and society of her said husband; that from and after the time of said marriage and until the interference on the part of the defendant hereinafter set forth, the said Bert Allard was deeply attached to his said wife, the plaintiff; and the plaintiff and her said husband lived happily together as husband and wife, and but for the wrongful and malicious acts of the defendant, hereinafter set forth, would have continued so to live together; that the defendant, unjustly and craftily contriving and wickedly intending to injure the plaintiff, and to deprive her of the aid, comfort and society of her said husband and to alienate his affections from her, heretofore, on the first day of January, 1922, and on divers other days between that day and the day of the purchase of this writ, wrongfully and maliciously sought to prejudice the mind of said Bert Allard against the plaintiff, and alienate his affections from her by subtle contrivances, coaxing, flattery, threats, warnings, slanderous statements about the plaintiff and wrongful suggestions and misrepre-

sentations of various kinds, to entice him to separate himself from the plaintiff and to leave and desert her, said plaintiff in no wise consenting thereto; that on the 31st day of March, 1924, the said Bert Allard was by the aforesaid enticements persuaded and induced by the defendant to desert and abandon the plaintiff and her child; and the said Bert Allard was further persuaded and induced by the defendant to bring a divorce suit against the plaintiff; that as a result of the aforesaid arts and contrivances, slanders and misrepresentations of the plaintiff to her said husband, the defendant has wrongfully and maliciously alienated the affections of her said husband from the plaintiff, and has wrongfully and maliciously enticed him to separate himself from her, whereby the plaintiff and her child have been deprived of the society, comfort and support of her said husband and the plaintiff has suffered great injury to her feelings and reputation; and the plaintiff further alleges that the facts herein alleged and the cause of action were first discovered by her within three years of the date of this writ, to the damage of the said plaintiff as she says the sum of forty thousand dollars.

"The writ in this action is dated June 11, A. D. 1924 and was legally served upon said defendant on the 13th day of June, A. D. 1924. And the same was duly entered at the October Term, A. D. 1924, when and where the said defendant appears and defends and when and where on the sixth day thereof the following amendment is filed in accordance with stipulation, viz:

"AMENDED DECLARATION

"In a plea of the case for that the plaintiff on the twenty-ninth day of November, 1916, at Richmond, in the County of Sagadahoc and State of Maine, was lawfully married to Bert Allard of said Richmond, who is the brother of the defendant; that at all times since the said marriage the said Bert Allard and the plaintiff have been and now are husband and wife; that by reason of said marriage the plaintiff became and was entitled to the aid, support, company and society of her said husband; that from and after the time of said marriage and until the interference on the part of the

defendant hereinafter set forth, the said Bert Allard was deeply attached to his said wife, the plaintiff; and the plaintiff and her said husband lived happily together as husband and wife, and but for the wilful, wrongful and malicious acts of the defendant, hereinafter set forth, would have continued so to live together; that the defendant, being a female person more than eighteen years of age, craftily contriving and wickedly intending to injure the plaintiff, and to deprive her of the aid, comfort and society of her said husband and to alienate his affections from her, heretofore, on the first day of September, 1919, and on divers other days between that day and the day of the purchase of this writ, wilfully, wrongfully and maliciously sought to prejudice the mind of said Bert Allard against the plaintiff, and alienate his affections from her by subtle contrivances, coaxing, flattery, threats, warnings, slanderous statements about the plaintiff, and wrongful suggestions and misrepresentations of various kinds to entice him to separate himself from the plaintiff and to leave and desert her, said plaintiff in no wise consenting thereto; that on the 31st day of March, 1924, the said Bert Allard was by the aforesaid enticements persuaded and induced by the defendant to desert and abandon the plaintiff and her child; and the said Bert Allard was further persuaded and induced by the defendant to bring a divorce suit against the plaintiff; that as a result of the aforesaid arts, enticements, inducements, contrivances, slanders and misrepresentations of the plaintiff to her husband, the defendant has wilfully, wrongfully and maliciously alienated the affections of her said husband from the plaintiff, and has wilfully, wrongfully and maliciously enticed him to separate himself from her, whereby the plaintiff and her child have been deprived of the society, aid, comfort and support of her said husband and the plaintiff has suffered great injury to her feelings and reputation; and the plaintiff further alleges that the facts herein alleged and the cause of action were first discovered by her within three years of the date of this writ.

"Also for that the defendant, being a female person

more than eighteen years of age, on the first day of September, 1919, and on divers other days between that day and the date of this writ, unjustly contriving and maliciously intending to injure the plaintiff, alienated the affections of her husband, Bert Allard, and deprived her of the aid, comfort and society of her said husband, Bert Allard, by wilful and wrongful arts, enticements and inducements, whereby the said husband did leave and desert his said wife and thereby the affections of the said Bert Allard for his said wife, the plaintiff, has been wholly alienated and destroyed; and the plaintiff has brought this action within three years of the discovery of the offense of alienated as above set forth.

"And the same is thence continued to the present term, where, on the fourth day hereof Pleadings are filed, viz: And now the defendant comes and defends, and for plea says that she is not guilty in manner and form as the plaintiff has declared against her, and of this puts herself upon the Country.

"By her Attorney, Frank A. Morey
"And the plaintiff likewise. By her Attorney,
Ernest L. Goodspeed.

"And the case is opened to a Drawn Jury with C. A. Corliss of Bath, acting as Foreman. On the eighth day hereof the case is submitted to said Jury, who return a verdict for the Plaintiff in the sum of $10,-083.33. And on the same day hereof, Motion for a New Trial and exceptions were filed and allowed, and the case is continued, marked 'LAW.'

"And on November 7, 1925, the following Mandate was received from the Law Court, viz:
"Rescript, WILSON, C. J.

"In an action for alienation of affections, evidence of the amount of taxes paid by the defendant was offered apparently for the purpose of showing her financial condition. While evidence of the wealth or standing of a defendant in such cases is admissible on the question of exemplary damages, the amount of taxes paid is not admissible on this question and was properly excluded.

"Exceptions taken to the refusal to give certain instructions to the jury were not included in the defendant's bill of exceptions and are not before this Court. Nor can facts be considered not made a part of the bill of exceptions, as this Court is confined to those stated in the bill.

"The other exceptions on which the defendant relies are grounded on alleged expression of opinion by the presiding Justice in his charge to the jury in violation of Sec. 102, Chap. 87 R. S. It does not appear, however, from the defendant's bill of exceptions that the presiding Justice exceeded his prerogatives or violated the statute referred to, at least, to the point of prejudicial error.

"Exceptions overruled.

"Received November 5th, 1925.

"It is therefore considered and ordered by the Court that the said Plaintiff recover judgment against the said defendant for the sum of ten thousand five hundred twenty-three dollars and sixty-two cents, damage, and two hundred twenty-seven dollars and twenty-eight cents, costs of suit. Judgment entered up October 30, A. D. 1925. Execution issued November 9, A. D. 1925.

"STATE OF MAINE.

"Sagadahoc, ss.              Supreme Judicial Court,
                               October Term, A. D. 1925.

"And now on the tenth day of the term, being the thirtieth day of October, anno Domini one thousand nine hundred and twenty-five, it is hereby ordered: That in all actions whereby final decision has been had, judgment be rendered as of this day unless previous judgment shall have been rendered, and that all other actions not otherwise disposed of, be now continued and that Court now adjourn without day.

"Attest:              Fred H. Thompson, Clerk.
    (Court Seal)

"A true copy of the Record.
    "Attest:          Fred H. Thompson, Clerk.
    (Court Seal)

"IN THE SUPREME JUDICIAL COURT OF THE STATE OF
   MAINE IN AND FOR THE COUNTY OF SAGADAHOC.

"STATE OF MAINE,    }
County of Sagadahoc  }  ss.

   "I, Fred H. Thompson, Clerk of the Supreme Judicial Court of the State of Maine, for the County of Sagadahoc, do hereby certify that the foregoing is a true and correct transcript of the record and judgment in cause No. 4127 in said court, wherein Annie Allard is plaintiff and Lillie A. LaPlain is defendant, as the same appears on file and of record in my office.

   "IN TESTIMONY WHEREOF I have hereunto set my hand and affixed the seal of said court this 17th day of February, 1926.

(Court Seal)            Fred H. Thompson, Clerk.

---

"STATE OF MAINE,    }
County of Sagadahoc  }  ss.

   "I, Scott Wilson, Chief Justice of the Supreme Judicial Court of the State of Maine, for the County of Sagadahoc, the same being a court of record and having a clerk and seal, and having jurisdiction of such actions, and I as such judge do hereby certify that the above certificate of attestation is in due form, according to the laws of the State of Maine, and is entitled to full faith and credit.

   "IN WITNESS WHEREOF I have hereunto set my hand, and caused the seal of said court to be hereunto affixed, this 17th day of February, 1926.

                          "Scott Wilson,
"Attest:            Chief Justice Sup. Jud. Court.
   Fred H. Thompson, Clerk.
(Court Seal)

---

"STATE OF MAINE    }
County of Sagadahoc  }  ss.

   "I, Fred H. Thompson, Clerk of the Supreme Judicial Court of the State of Maine, for the County of Sagadahoc, do hereby certify, that the Honorable Scott Wilson, who has signed the foregoing attestation is the duly elected, qualified and acting Chief Justice

of said court, and that the signature of said judge to
said certificate is genuine.

"IN TESTIMONY WHEREOF, I have hereunto set my
hand and affixed the seal of said court this 17th day of
February, 1926.

    (Court Seal)          "Fred H. Thompson, Clerk."

This record of the Maine court, it will be noticed,
is certified strictly as prescribed by § 687, Title 22,
U. S. Code, which was enacted by Congress to facilitate
the operation of § 1, Art. 4, of the constitution of the
United States, prescribing that "full faith and credit
shall be given in each state to  .  .  .  judicial pro-
ceedings of every other state." There was no evidence
introduced, or offered upon the trial, negativing the
recitals in this record as to the Maine court acquiring
in that action jurisdiction over the person of appel-
lant. Indeed, her own testimony, given upon the trial
of this action, renders it plain that she was in the
state of Maine at the time of the commencement of that
action, subject to service of process therein, and also
that she was present at the trial of that action in the
Maine court.

There was offered in evidence in behalf of appellant
certain records and files of the United States court for
this district showing that appellant had, on January
12, 1926, filed therein her voluntary petition in bank-
ruptcy; that she had been, on January 14, 1926, by
that court duly adjudged a bankrupt; that respondent
had filed in that bankruptcy proceeding her claim here
sued upon, looking to sharing, as a creditor, in the
bankrupt estate of appellant; and that appellant had
been, on February 24, 1927, by order of that court,
duly discharged from all debts and claims made prov-
able by the bankruptcy act, "except such debts as are
by law excepted from the operation of discharge in
bankruptcy." These offers of proof were by the court

rejected, though physically retained in the record, as
not constituting any defense to the claim of respondent
here sued upon; the court deciding, as a matter of law,
that respondent's claim here sued upon was not dis-
chargeable in bankruptcy and hence the bankruptcy
proceeding was not a legal impediment to the prosecu-
tion of this action.

There was also offered in evidence in behalf of ap-
pellant a certified copy of the instructions given by the
Maine court in the action in which the judgment here
sued upon was rendered against appellant, with a view
of showing that the issues in that action did not, under
the laws of Maine, involve any question of "wilful and
malicious injuries to the person or property" of ap-
pellant, in view of her being the sister of the husband
of respondent. This offer of proof was also by the
court rejected, though physically retained in the rec-
ord, as not constituting proof of the real issues in that
case different from the recitals in the certified record
of the Maine judgment introduced in evidence in be-
half of respondent. Other facts will be noticed, as we
proceed, as may seem necessary in our discussion of
the several contentions made by counsel for the respec-
tive parties.

[1] It is contended in behalf of appellant that the
alleged judgment of the Maine court is not properly
evidenced by the certified record of that court intro-
duced in evidence in this case. The argument seems to
be that the portions of that document preceding the
words "It is therefore considered and ordered by the
court that the said plaintiff recover judgment," con-
stitute a mere interpretation of the record of the case
by the clerk of what preceded the entry of the judg-
ment, rather than constituting a copy of the record of
the proceedings, which occurred prior to the rendering
of the judgment. We do not so read this certified tran-

script of the judgment of the Maine court. It seems plain to us that all those portions thereof preceding the words "It is therefore considered" are recitals in, and a part of, the judgment. This whole writing manifestly was entered as of October 30, 1925, that being the last day of the term of that court, as directed by its general order entered on that day, though the case did not come back from the "law court," which had overruled the trial exceptions, until November 7, 1925. We conclude that these recitals are a part of the court's judgment, plainly showing the acquiring of jurisdiction by the court over the person of appellant, the issue of wilful and malicious injury to respondent presented in the case, and the rendering of the judgment thereon against appellant. *Maxwell v. Stewart,* 88 U. S. 71, 22 L. Ed. 564. Our decision in *Wick v. Rea,* 54 Wash. 424, 103 Pac. 462, and authorities therein cited, are in harmony with this conclusion.

[2] Further contention is made that this purported record of the Maine court fails to show any due authentication in the original making thereof, in that it fails to show the original record thereof as having been in any manner authenticated by the signature of the presiding judge of that court. The argument is that the signature of the clerk alone to the original record does not constitute an effective authentication thereof as a record of the judgment and its recital. Counsel for appellant seem to proceed upon the theory that we must assume the Maine law of procedure to be the same as our own, and that therefore a judgment of a Maine court must be authenticated by the signature of the presiding judge, as required by our procedure statute, Rem. Comp. Stat., § 431 [P. C. § 8081]. It seems plain to us that such a presumption, assuming for argument's sake it should prevail as to mere pro-

cedure law under some circumstances, can have no application here, for this purported record of the judgment of the Maine court is certified by its clerk as being "a true and correct transcript of the record and judgment . . . as the same appears on file and of record in my office;" and the presiding judge of that court further certifies "that the above certificate of attestation is in due form according to the laws of the state of Maine and is entitled to full faith and credit;" which certificates of the clerk and judge, as already noticed, are strictly in compliance with § 687, Title 28, U. S. Code, enacted by Congress to facilitate the operation of the full faith and credit clause of the Federal constitution. So these certificates, it seems plain to us, mean that the original record of the judgment rendered by the Maine court and its recitals are in due form as evidencing the rendering of the judgment according to the laws of that state.

[3] Contention is made in behalf of appellant that the judgment of the Maine court was rendered upon a liability dischargeable in bankruptcy, and hence was discharged by the general bankruptcy discharge awarded to appellant by the Federal district court. In § 35, Title 11, U. S. Code, prescribing the effect of a general bankruptcy discharge, we read:

"A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as . . . (second) are liabilities . . . for wilful and malicious injuries to the person or property of another."

Now, looking alone to the recitals of the judgment of the Maine court, it is plain that the liability upon which that judgment was rendered is one for appellant's having wilfully and maliciously alienated the affections of the husband of respondent. This, we think, means "wilful and malicious injuries to the person or property" of respondent, within the meaning of the

language of the bankruptcy statute above quoted. It was so held in *Leicester v. Hoadley,* 66 Kan. 172, 71 Pac. 318, and *Exline v. Sargent,* 13-23 Ohio Cir. Ct. R. 180. No decision or text authority, expressing a view of the law contrary to these decisions, has come to our attention. We conclude, therefore, that unless there be, in the proof introduced or offered in behalf of appellant, some substantial showing negativing the recitals of the judgment of the Maine court as to the jurisdiction of that court acquired over the person of appellant, or negativing the recitals of the judgment of that court as to the wilful and malicious injury causing the damage for which the judgment was rendered, or some showing of estoppel against respondent by reason of her attempt to participate as a creditor in appellant's bankrupt estate, it must be decided that the liability evidenced by the judgment of the Maine court was not discharged by the general discharge awarded to appellant by the Federal district court.

It is plain that the recitals of the judgment of the Maine court show *prima facie* the acquiring in that action of jurisdiction over the person of appellant, and her own testimony conclusively shows that she was present and actually participated in the trial of that action in the Maine court. Indeed, we do not understand counsel for appellant to seriously contend to the contrary.

[4] We have noticed that there was offered in evidence, in behalf of appellant in this case, a certified copy of the instructions given by the Maine court to the jury in the action in which the judgment here sued upon was rendered. This was an effort to show that there was not presented to the jury in that action the necessity of proving unlawful malicious action on the part of appellant in the alienation of the affections of her brother from respondent, his wife; and in an ef-

fort to further show that, under the laws of Maine, there was no necessity of showing unlawful malicious action on the part of appellant, though she was the sister of respondent's husband, in order to enable respondent to recover in that action. It is contended in behalf of appellant that the superior court erred in excluding this offered proof. The argument seems to be that these instructions and the law of the state of Maine, as therein expounded, exclude all unlawful malicious intent on the part of appellant as an element necessary or proper to be considered in an alienation of affections suit in that state; those wherein the accused is a near relative of one whose affections are alleged to have been alienated as well as strangers so accused. In other words, the argument seems to be that, according to the laws of Maine the element of malice has no place in any alienation of affections suit, and that hence a judgment rendered in favor of the plaintiff in such a suit in that state is not a judgment for a liability for "wilful and malicious injuries to the person or property of another." Now, let us see what there was in those instructions of the Maine court, offered in evidence in this action, having any tendency to show that the Maine court excluded the element of malice on the part of appellant in the alienation of the affections of respondent's husband, appellant's brother. All portions of those instructions which we regard as being of any possible aid to appellant in this contention are the following:

"It has long been the law that when a man loses the affection of his wife due to the intervention of some other man, he has an action against the other man for damages which he can prove. It has not been twelve years that we have lived in this state under a rule which makes it possible for a woman who has lost the affection of her husband through the intervention or

meddling of another woman to recover damages. But such is now the law. I shall read so much as applies to the case:

" 'Whosoever being a female person more than 18 years of age alienates the affection of husband of a married woman, or by any art, enticements or enducements deprives any married woman of the aid, comfort and society of her husband, shall be liable in damages to such married woman in an action on the case brought by her within three years of the discovery of such offence.' . . .

"It is agreed that in 1916 Bert Allard took this woman to be his wife; that she is his lawful wife. If you find that she has lost the affection of her husband, she would not then be entitled to any damages unless you find further that the person who is sued, the defendant, by her intervention, her meddling, has wilfully taken part, and taken that affection from the wife. . . .

". . . I charge you that even if you should find from the evidence that she had begun to lose his affection and it was slipping away from her, but if you also find that by allurements, enticements or endearments or dealings, this woman defendant contributed to the removal of the affection from the wife, she would be guilty. . . .

"And we take pains to show by a printed statute that if any other woman, any other woman old enough to know better, at least 18 years old, abstracts from the wife the affection of her husband by any art, enticement, and enducement, that she has committed a wrong on the wife and is liable to answer in damages.
. . .

"If this other party, this other woman, came in, and if the allegations are such as they are in this writ, what the law calls express malice, such as might be a wicked hatred of another person, that doesn't have to be proven. But it would have to be proven that the alienation of affections, if you find it, was intentional. And it has to be proven it is unjustifiable, if cases can be considered where such actions can be justifiable. And the law says it is wrong; *and this wrongful act*

*will give by implication all the malice that is necessary
in a case where the allegations in the writ are such as
in this case. . . .*

"So that if you should conclude she was wrongfully
deprived of the aid, comfort and society of her hus-
band by Mrs. LaPlain, then the law says that you shall
make her whole from the purse of Mrs. LaPlain, so
far as it can be done, for the deprivation. . . .

"If you find that the defendant did intervene, and
arguments of counsel assist you on that point, one
stoutly insisting that the older sister simply attempts
to aid her brother who is approaching a condition
where he will need all of his wordly goods, and the
other saying that by a succession of letters running
from sometime in the late summer or fall clear through
until the next March, only a portion of which have
been preserved, by artifice and cunning contrivance,
for love of lucre, this defendant persisted in operating
upon a mind that might be slipping a bit from its
moorings and might be easily influenced,—if you find
that that latter contention is true, then it is for you
to compute the damages, . . ."

We have italicized the words particularly relied
upon by counsel for appellant. We do not see in these
words any exclusion of the element of malice, though
they exclude the necessity of direct proof of malice in
the sense of actual ill-will or hatred toward respond-
ent; but, manifestly, malice of that nature does not
have to be shown in order to support recovery in
alienation of affections suits. It is only necessary
that alienation of affections be shown to be for some
unjustifiable purpose, and this, it seems to us, is all
those italicized words of the instructions mean, when
read in the light of the paragraph in which they are
used, and especially when read in the light of the other
above quoted instructions. The malice drawn in ques-
tion in alienation of affections suits is not necessarily
ill-will towards the alleged injured party, but it is

that wrongfulness constituting malice born of unjustifiable and unlawful interference by the one effecting the alienation of affections of a married person.

It seems clear to us that these instructions do not, in stating the Maine law, carry the thought that recovery in an alienation of affections suit in that state is determinable apart from such wrongful malicious action on the part of the accused. The general rule is, in substance, that when alienation of affections is shown to be the result of advice or persuasion on the part of certain very near relatives, the maliciousness of the advice or persuasion is to be affirmatively shown by the one claiming to be injured thereby, before recovery can be had therefor; while as to strangers so causing alienation of affections, such maliciousness on their part is in law presumed, and the contrary is to be affirmatively shown by them before they can escape liability therefor. *Stanley v. Stanley,* 27 Wash. 570, 68 Pac. 187; *Baird v. Carle,* 157 Wis. 565, 147 N. W. 834; *Powell v. Benthall,* 136 N. C. 145, 48 S. E. 598; *Miller v. Miller,* 154 Iowa 344, 134 N. W. 1058; *Trumbull v. Trumbull,* 71 Neb. 186, 98 N. W. 683; *Luick v. Arends,* 21 N. D. 614, 132 N. W. 353; *McCollister v. McCollister,* 138 Atl. (Me.) 472.

It is of interest to here note that the law of Maine, as shown by this last cited decision, is in harmony with this view. So it seems plain that in Maine, as elsewhere, the burden of proving malice, in a case where the relationship is as here in question, rests upon the plaintiff. It follows that respondent, the plaintiff in the action in the Maine court, had resting upon her and successfully maintained that burden in that action. We do not think the instructions of that court above quoted, fairly read, show the issues to have been otherwise presented to the jury in that action.

[5]   Contention is made in behalf of appellant that respondent, by filing in the Federal district court her claim based upon the judgment of the Maine court and thereby seeking to participate as a creditor in the bankrupt estate, thereby elected to waive her right to thereafter sue upon that judgment as a claim not dischargeable in bankruptcy. This contention was effectively answered in the negative by the supreme court of the United States in *Friend v. Talcott*, 228 U. S. 27, 57 L. Ed. 718. In that case, Talcott had not only filed his claim in the bankruptcy proceeding and thereby sought participation as a creditor in the bankrupt estate, but had opposed composition with the creditors of the bankrupt and opposed the general discharge of the bankrupt awarded by the Federal district court. Chief Justice White, speaking for the court, stated the principal controlling facts as follows:

"In April, 1905,—about a year after the composition—Talcott commenced this action to recover from the former bankrupt firm the damages suffered by him because of deceit practised in procuring the sale of goods on credit. The deceit relied upon was the deceit which had been alleged as a basis for the opposition to the composition. . . . In addition to the general issue the defendants set up as *res judicata* the order arising from confirmation of the composition. The cause was heard upon the issue of former adjudication, and judgment was entered in favor of the defendants, the judgment reciting that the matters and things involved in the suit had been fully adjudicated in the bankruptcy proceedings. On reviewing the cause, the circuit court of appeals concluded that the act of Talcott in going into the bankruptcy proceedings and proving his claim as one on contract did not constitute an election by him to be bound by the discharge if otherwise under the bankruptcy act the claim was excepted from such discharge, and that the fact of participating in the bankruptcy proceeding for the purpose of obtaining the benefits of the distribution

therein made was not a waiver by Talcott of his right to proceed in an action for deceit to collect the deficiency notwithstanding the discharge. The court, moreover, decided that the opposition to the composition, its confirmation, and the resulting general discharge, did not constitute the thing adjudged, estopping Talcott from asserting that his claim for damages suffered by the deceit was not embraced by the discharge.''

And then answering the contention that Talcott had thereby waived his right to thereafter seek recovery upon his claim as one not dischargeable in bankruptcy, the learned Chief Justice said, in part:

: ''Its error lies in assuming that the right which the bankrupt act confers upon enumerated classes of debts to be exempt from the operation of a discharge rests upon the conception that such debts are exempt because they are excluded from the act, and may not participate in the distribution of assets. That is to say, the confusion lies in not distinguishing between creditors who are excluded from the bankrupt act and those who, although included therein, have had conferred upon them the benefit of an exception from the operation of the discharge. Even a superficial analysis of the text of the bankruptcy act will make this clear. Thus, § 63a and b (30 Stat. 562) enumerates the debts which may be proved, and which are therefore entitled to participate in the benefits of the act and are bound by its provisions, including a discharge. Section 17 (30 Stat. 550) enumerates the debts not affected by a discharge; that is, those exempted from its operation. It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act, or of deprivation of right to participate in the distribution, but solely on the ground that, although such rights are enjoyed, an exemption from the effect of the discharge is superadded. The text leaves no room for any other view, since the exceptions in terms are accorded to certain classes of debts which are provable under § 63, and therefore debts which are entitled to participate in the distribution, the language

being: 'A discharge in bankruptcy shall release a bankrupt from all of his *provable* debts, except such as,' etc.''

We conclude that respondent did not, by seeking allowance of her claim in the bankruptcy proceeding, waive her right to sue upon the judgment of the Maine court as a liability for wilful and malicious injuries to her person or property; that is, as a liability not dischargeable in bankruptcy.

[6] In appellant's fourth affirmative defense, she pleaded facts which, she claims, constituted fraud on the part of respondent in procuring the rendering of the judgment of the Maine court, such as should induce the courts of this state to refuse to give full faith and credit to that judgment. The trial court sustained respondent's demurrer to this affirmative defense, thus rejecting it, which ruling is here claimed by counsel for appellant to have been erroneous. No facts are pleaded in that defense in the least suggesting that the Maine court did not regularly and fairly acquire jurisdiction over the person of appellant in that action, nor that it did not have jurisdiction over actions of that nature under the laws of Maine. The principal allegation of fraud set up in that defense is, in substance, that in the trial of the action in the Maine court respondent testified falsely to material facts against appellant, such as to entitle her to have that judgment set aside in the Maine court, under § 1, ch. 94, of the Revised Statutes of 1916 of that state. This statute is not pleaded in that affirmative defense by copy, but is pleaded in substance and by reference to section and chapter of the revised statutes of that state, in such manner that we feel justified in noticing its exact language as found therein. It reads, touching our present inquiry, as follows:

"The supreme judicial court held by one justice,
may grant one review in civil actions, including peti-
tions for partition, and for certiorari, and proceedings
for the location of lands reserved for public uses, when
judgment has been rendered in any judicial tribunal,
if petition therefor is presented within three years
after the rendition of judgment, and in the special
cases following: . . .

"II.  When the petitioner shows that a witness
testified falsely to material facts against him in the
trial of the action, whereby he was surprised, and was
then unable to prove the falsity, but has since discov-
ered evidence, which with that before known, is, in
the opinion of the court, sufficient proof that the testi-
mony was false; . . ."

Plainly, we think such fraud does not, under that
statute, impair the validity of the judgment prior to
its setting aside upon such review as is therein con-
templated.  Manifestly, a judgment, subject to be so
reviewed by the court in which it was rendered, stands
as any other final judgment until, by the exercise of
the further jurisdiction of that court, it is suspended
or set aside.  The judgment is not rendered void by
such fraud, but merely rendered voidable by appro-
priate subsequent proceedings which may be instituted
within the three-year statutory period.  We do not
think the courts of this state can lawfully take notice
of any such fraud looking to the ignoring of the full
faith and credit to be given to that judgment, as re-
quired by the Federal constitution.

There is no allegation in this affirmative defense that
any review of that judgment, as contemplated by the
Maine statute, above quoted, has ever been sought in
the Maine court.  If the pendency of such a review
proceeding were pleaded in this affirmative defense, it
is possible that the courts of this state might delay
their giving full faith and credit to the judgment of

that court until the review proceeding was therein disposed of; but that is a problem wholly foreign to our present inquiry.

[7] The other alleged acts of fraud on the part of respondent, charged as impairing the validity of the judgment of the Maine court are, to our minds, wholly without substantial validity. Indeed, they are almost wholly attacks upon the regularity of the proceedings in the Maine court in the action in which the judgment here sued upon was rendered, which, at most, would constitute only error committed in the action by that court. Such claims against the validity of the Maine judgment are manifestly of no moment whatever in our present inquiry. The only fraud which would be cognizable in the courts of this state, looking to the denial of full faith and credit of the judgment of the Maine court, is fraud that has to do with the acquiring of jurisdiction over appellant in the action in which the judgment was rendered. No fraud of this nature is alleged in this affirmative answer. Indeed, it later developed in the trial of this case by appellant's own testimony that there was no want of jurisdiction of the Maine court over her person in this action. We conclude that the superior court did not err in rejecting this affirmative defense. *Simmons v. Saul,* 138 U. S. 439, 34 L. Ed. 1054; *Roche v. McDonald,* U. S. Adv. Ops. 1927-28, p. 149; *Ambler v. Whipple,* 139 Ill. 311, 28 N. E. 841. Our own decision in *Bayer v. Bayer,* 83 Wash. 430, 145 Pac. 433, is in harmony with this conclusion.

Some other claims of error are presented to us. We have critically examined them, and deem it sufficient to say that we regard them as wholly without substantial merit. We conclude that the trial court did not err in deciding the case, as a matter of law, in favor

of respondent and accordingly awarding her recovery upon the judgment of the Maine court.

The judgment is affirmed.

MACKINTOSH, C. J., MITCHELL, and ASKREN, JJ., concur.