## MARY P. TOWNE
*vs.*
## JOSEPH M. TOWNE ET AL.

Superior Court     Fairfield County     File No. 52776

## MEMORANDUM FILED JANUARY 4, 1940.

*Norris Rossinoff*, of Bridgeport, for the Plaintiff.

*Hubbard & Cramer*, of Litchfield, for the Defendants.

O'SULLIVAN, J. The plaintiff and Joseph M. Towne, whom I shall call the defendant, intermarried in 1926 and from this union a son was born. They separated in the latter part of 1931 and from then on have never lived together. On January 10, 1934, they entered into a written contract, by the terms of which the defendant agreed to pay his wife $100 each month in full satisfaction of all claims she might have for the support of herself and her child, with the proviso that this monthly sum should be increased $25 for each $1,000 by which the defendant's annual income should exceed $4,000. A further provision recited that the defendant's obligation to make these payments would cease if the marriage between the parties should ever be dissolved. Beginning in January, 1937, Towne has paid but $60 monthly and the plaintiff sues to recover the additional $40 to which the contract entitled her. She also seeks an accounting to determine whether his annual income so far exceeds $4,000 as to require him to pay the further amounts contemplated by their agreement. Counsel have stipulated that, without entering an interlocutory order to account, the court on the evidence before it might determine this phase of the case at this time.

The defendant seeks to escape from his contractual obligations by establishing that on November 16, 1936, the matrimonial bond was dissolved by a court of competent jurisdiction in the State of Nevada. In entering its decree, that court passed an order, which Towne has ever since honored, that the sum of $60 should be paid monthly to Mrs. Towne for the

maintenance of the child. Since this decree, the defendant has remarried.

To nullify the force of this evidence, the plaintiff urges that the decree should not be recognized because it is invalid, and the reasons she advances therefor are threefold: first, because the Nevada court had no jurisdiction; secondly, because fraud was practised on the court; and finally, because the decree was based on a ground hostile to the public policy of the State of Connecticut.

The first claim is without merit. Domicile is the *sine qua non* to jurisdiction over the marital status. Without it, there cannot be jurisdiction; with it, there is. A man may change his domicile at his own pleasure. The sole conditions by which a new domicile is obtained are: (1) an actual change of residence, and (2) the absence of an intention to remove elsewhere. *Gildersleeve vs. Gildersleeve*, 88 Conn. 689, 694. The purpose which prompts the seeking of a new domicile has no bearing or effect. "If the *animus* really exists to remain....permanently, the fact that the motive of removal is to procure a divorce is immaterial." Minor, Conflict of Laws (1901) §90.

The proof is that Towne moved to Nevada in 1936. There, he established his home, engaged in business ventures, and eventually bought a ranch where he now lives and upon which he intends to remain indefinitely. From these and other facts, it has been amply demonstrated that he acquired a new, *bona fide* domicile in 1936. Hence it follows that the Nevada court had jurisdiction over his marital status. *Gildersleeve vs. Gildersleeve, supra.*

The further claim that the decree is invalid proceeds on the assumption that it must have been predicated on false testimony as to the length of time the husband and wife had been separated. The divorce was sought under that provision of the Nevada statute which permits a court, at its discretion, to grant a decree when the parties have lived apart for the five consecutive years next preceding the filing of the complaint. The evidence before this court discloses that the separation lacked at least one month of the statutory requirement as to time. ·

In determining whether the decree of one state will be recognized in another by virtue of the full faith and credit clause of the Federal Constitution or, lacking circumstances requiring the application of this constitutional mandate, then by reason of

interstate comity, the element of fraud is quite important. The fraud, however, must be concerned in some manner with the question of jurisdiction. A decree may not be impeached solely for false testimony *Deyette vs. Deyette,* 92 Vt. 305, 104 Atl. 232; *Porter vs. Hammitt,* 78 Colo. 320, 241 Pac. 543; *Allard vs. La Plain,* 147 Wash. 497, 266 Pac. 688; *Hughes vs. Hughes,* 211 Ky. 799, 278 S. W. 121; *Littlefield vs. Paynter,* 111 Kan. 201, 206 Pac. 1114. In his work on Conflict of Laws (Vol. 2 [1935] §440.4), Beale makes note of the distinction which is drawn by the authorities between extrinsic and intrinsic fraud. The latter, he observes, is that which goes to the existence of a cause of action and cannot be employed for the purpose of im-peaching a foreign decree. "The fraud," he says, "which will be available to a defendant in his attack upon a foreign judg-ment, in the main, is fraud which has deprived him of the op-portunity to make a full and fair defense. There are many varieties of such fraud. Thus, where the defendant failed to present his case because the plaintiff agreed to drop the suit [citing, *Pearce vs. Olney,* 20 Conn. 544] or to compromise the case [citing, *Davis vs. Headley,* 22 N.J. Eq. 115], or notified the defendant that the proceeding had been dismissed [citing, *Duringer vs. Moschino,* 93 Ind. 495], or by any other agree-ment or promise lulled the defendant into a false security [citing, *U. S. vs. Throckmorton,* 98 U.S. 61], the judgment may be attacked by the defendant."

I conclude, therefore, that the plaintiff may not challenge the Nevada decree because of false testimony. I should add, how-ever, that the undisputed facts of the instant case demonstrate beyond all question that the Nevada court could not have entered its judgment unless the testimony before it was at vari-ance with the admissions now made by Towne. The basis of the divorce was that he had been separated from his wife for the five years next preceding his petition. The fact is that the separation lacked at least one month to make up the term of five years. Were it not for the rule, I would hold, in response to the claim under discussion, that the Nevada decree, being the result of false testimony, has been successfully attacked and should not be recognized.

The plaintiff's final claim is that the public policy of this state precludes a recognition of the Nevada decree.

Towne brought his petition for a divorce on the ground that his situation fell within the purview of the following statute:

"When the husband and wife have lived apart for five consecutive years without cohabitation the court may at its discretion grant an absolute decree of divorce at the suit of either party." (Nevada Session Laws [1931] chap. 111, §1; Comp. Laws [Hillyer, 1929] §9467.06.)

In his Conflict of Laws, Minor sets forth (§5) what he conceives to be the exceptions to the application of comity. "There may be said to be five instances wherein it is generally considered that the municipal law of the State where the question is raised forbids the enforcement of a foreign law: (1) where the enforcement of the foreign law would contravene some established and important policy of the State of the forum; (2) where the enforcement of such foreign law would involve injustice and injury to the people of the forum; (3) where such enforcement would contravene the canons of morality established by civilized society; (4) where the foreign law is penal in its nature; and (5) where the question relates to real property."

Guided by these principles, Connecticut courts, as an act of interstate comity, must accord to the Nevada decree full recognition, unless one or more of the enumerated exceptions dictate a different course. The only ones of possible present pertinence are those relating to public policy and good morals.

The legislative histories of both Nevada and Connecticut are similar in at least one respect. Each demonstrates a broad attitude upon the availability of divorce. The first law on divorce was enacted in Connecticut in 1667 and evidenced a liberality on the subject of the dissolution of marriage unknown in any other Christian country at that period. 1 Swift's Digest, p. 24. To the four grounds permitted by the original statute, others have from time to time been added, until a married person's right to seek a divorce is now available for any one of nine distinct causes. Obviously, the continuity of legislative pronouncements extending over 273 years indicates a public policy dedicated to the desirability of divorce as an institution.

There are states which provide fewer and others which provide more grounds for divorce than does Connecticut. That Nevada recognizes a cause for divorce not available under our statute does not require this court to hold such a cause or a decree based thereon as contrary to the public policy of this state. "If the proposition advanced....is well made, we should logically be compelled to declare....that no divorce granted in a sister state for a cause....which would not at the

time have authorized the granting of one in this state should have recognition by our courts, except as the Federal Constitution compels such recognition. This we are not prepared to do." *Gildersleeve vs. Gildersleeve, supra,* 697.

It is true that the Nevada statute does not demand that the petitioner be without fault. *Herrick vs. Herrick,* 55 Nev. 59, 25 Pac. (2d) 378. In this respect there is a departure from the theory of divorce regulation adopted in Connecticut. The objective, however, of the Nevada statute is substantially the same as that of our own state. "The legislative concept embodied in the statute is that when the conduct of parties in living apart over a long lapse of time without cohabitation has made it probable that they connot live together in happiness, the best interest of the parties and of the state will be promoted by a divorce." *George vs. George,* 56 Nev. 12, 17, 41 Pac. (2d) 1059, 1060. Our own court of last resort, in referring to intolerable cruelty as a cause, speaks of the wisdom of divorce when the public and personal objects of matrimony have been destroyed beyond rehabilitation. In both states, the objective is similar. By way of parenthesis, it might be added that North Carolina, Rhode Island, Louisiana and Kentucky have provisions in their divorce statute similar to that under discussion.

It is no frivolsome task to ignore the judgments of other states, especially where social relationships are involved. The reasoning of the Chief Justice in the *Gildersleeve* case (p. 698) is appropriate for the instant case. "It is no light matter, as affecting individual, social or civic interests and good morals, that, through the attitude of the courts in refusing recognition to the judicial action of sister States, a condition should be created where legitimacy becomes dependent upon State lines, where wives in one state become concubines when they pass into another, where husband or wife living in lawful wedlock in one jurisdiction is converted into a bigamist by change of location, where persons capable of inheritance in one part of our country are incapable in another, where certainty of status may readily give place to uncertainty and property rights thrown into confusion. The argument for uniform divorce legislation is indeed a strong one, but it by no means follows that, until that happy consummation is achieved, the public interest would be best served by the several States denying to the legislative and judicial acts of others that recognition without which conditions of uncertainty and hardship will abound until human nature is transformed."

Accordingly, I must conclude that the Nevada decree is entitled to recognition in this state, as it is not hostile to our settled public policy.

On the phase of the case which requires the court to ascertain the income of the defendant since the execution of the contract, the following should be said. The annual income of the defendant was $4,640.50 in 1934, $4,081 in 1935, and $6,674.50 in 1936. The source of this income was from dividends received on shares of stock owned by Towne and from a trust fund of which he was the beneficiary. In 1936, the annual income of the defendant was such that, in conformity with his agreement, he should have paid the plaintiff an additional $50 each month from January until and including November. This amounts to $550 to which, with interest from the date of the writ, the plaintiff is entitled.

In addition to the named defendant, Frederick F. Towne was originally cited in as a party defendant. Whatever cause of action was aimed at him appears in the second count, which was withdrawn during trial.

Accordingly, judgment may enter for the plaintiff to recover from Joseph M. Towne $647.63, and in favor of Frederick F. Towne.