Davis *v.* Headley.

---

## DAVIS *vs.* HEADLEY.

22 | 115
47 | 15
22 | 115
51 | 446
22 | 115
52 | 566
52 | 572
52 | 646
53 | 681

1. In the absence of any evidence to show the effect in the courts of another state, of a judgment or decree obtained in that state, this court must give such effect to the judgment as is indicated by the plain meaning of its words, and as would be given by the rules of law in this state to a like judgment of its own courts.

2. The reversal of a judgment generally, for a specified error alleged to be the only error, is a reversal of the whole judgment, and not only of the part held to be erroneous.

3. The liability of a defendant as the representative of a party dying *pendente lite,* like any other fact upon which a decree is founded, must appear by the record, and not by proof only.

4. Courts of equity will decree the performance of contracts relating to lands without their jurisdiction. But in such cases, the decree cannot affect the land, but can only be enforced when the court has jurisdiction of the person of the defendant, and thus compel him to execute the conveyance. In such case it is the conveyance, not the decree, that has effect.

5. A judgment by a court of another state that a deed given for lands in this state is void, is a judgment as to the title of lands here, which that

court has no jurisdiction to make. And it has no jurisdiction to decree a conveyance or delivery of possession founded on that decree. This rule is not varied by the Federal Constitution, or the act of Congress, declaring that the records and judicial proceedings of the courts of any state shall have such faith and credit given to them in the courts of another state, as they had by law or usage in the courts of the state whence they were taken.

6. This court will not enforce a judgment of the courts of another state obtained by fraud. And in a court of equity it can make no difference whether the fraud is set up in defence, or is in support of a suit to restrain further proceedings on the judgment. It will not inquire into or examine the merits of such judgment; but when the case shown by the record is such that no court could, upon any principles of law, have given the judgment unless imposed upon, this will be regarded and taken as proof that the judgment was obtained by fraud on the court.

7. A court of equity will not entertain a suit for a specific sum of money, recovered by the judgment of a court in another state.

This cause was argued on final hearing, upon bill, answer, replication, and proofs.

*Mr. Vanatta*, for complainant.

*Mr. McCarter*, for defendants.

THE CHANCELLOR.

The complainant is Elizabeth Davis, the universal legatee and devisee of Joseph H. Davis, deceased, and administratrix with his will annexed. The suit was brought against Samuel F. Headley, to enforce a decree obtained by J. H. Davis against him in the courts of Kentucky; his wife, the defendant, Maria J. Headley, was joined, because of her inchoate right of dower in lands in this state, supposed to be affected by the decree.

S. F. Headley answered alone, without his wife. After issue, while the testimony was being taken, he died, and by an order made in the cause, reciting that, by his will, his son, J. B. Headley, was appointed an executor thereof, with the defendant, Maria J. Headley, the said J. B. Headley, executor of the will, and Elizabeth Bently, a daughter, heir and devisee of the testator, with her husband, were directed

to be made defendants in place of the testator. The order directed that a copy be served on them within thirty days from its date, and that they should answer in thirty days from the service. Those substituted defendants did not appear, nor did the complainant file any appearance for them.

J. Boyd Headley afterwards died, and no one was made defendant in his stead.

The judgment sought to be enforced is a judgment or decree of the Circuit Court of Lawrence county, Kentucky, on a petition in equity. That court has jurisdiction both of matters of law and of matters of equity. A decree was made by it in that suit, in which J. H. Davis was plaintiff, and S. F. Headley, defendant, in October, 1859, by which it was decreed, among other things, that the conveyance by Davis to Headley, of certain property in Morristown, in this state, be rescinded, set aside, and held for nought, and that Headley should restore to Davis the possession thereof, and that Headley should be forever restrained from setting up that conveyance in any suit touching that property. It was also adjudged that Davis should recover from Headley $500 with interest from December 12th, 1857, until paid, and his costs of that suit.

From this judgment Headley appealed, upon its being rendered. The Court of Appeals of Kentucky has jurisdiction of such appeals, and is the court of the last resort. In it the appeal remained until January Term, 1862. At that term the court determined the appeal, upon whose motion is not shown by the record or any evidence in the cause. It adjudged that the decree for $500 was erroneous, that it should have been for $213.50. The record then states: "We perceive no other error in the judgment, but for the error above mentioned, and on that ground alone, the judgment is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion."

Upon this judgment being remitted to the Circuit Court, judgment was entered thereon in that court as follows:

"The opinion of the Court of Appeals having been filed herein, it is now ordered and adjudged, in obedience to the directions of the opinion, that the plaintiff, Davis, recover of the defendant, Headley, the sum of $213.50, with interest thereon at the rate of six per centum per annum, from the 12th day of December, 1857, and the costs accruing since the return of the case from the Court of Appeals; and the defendant is forever barred and enjoined from enforcing the payment of any part of the $500 agreed by the plaintiff to be paid for one-sixth of the stock or interest of the unorganized corporation, for which a charter was granted by the legislature of Kentucky. The parties are hence dismissed."

. These are the judgments as contained in the record certified according to the act of Congress, and as set out in the bill. No evidence has been offered as to the effect of these judgments in the courts of Kentucky, except that it is shown that these are courts of record, and that their judgments cannot be impeached collaterally. But upon the question whether, in Kentucky, this reversal would be regarded as it imports to be upon its face, a reversal of the whole judgment below, nothing is shown.

This court must, therefore, give such effect to this judgment as is indicated by the plain meaning of its words, and as would be given to it by the rules of law in this state. The Court of Appeals find one error in the judgment; that error is specified, and then its judgment plainly and directly is, that on that ground, and that alone, the judgment of the Circuit Court is reversed, and the cause is remanded. The appeal is from the whole judgment below, not from any part of it, and the reversal is of the whole. The Kentucky civil code, then in force, provides, Title XII, § 575, "That a judgment or final order may be reversed or modified by the Court of Appeals, for errors appearing in the record."

The court then could, and perhaps ought to, have modified the judgment of the Circuit Court. But it was not done; the judgment below was simply reversed, and the record remanded, with the declaration that there was but one error

Davis *v.* Headley.

in it. It was remanded for further proceedings in the court below. That court could, thereupon, have given judgment for the rescission of the contract, and restoring the Morristown property, and the other relief given by its first judgment, reducing the amount of money recovered. This would seem to be the correct practice. But this was not done, the judgment was entered for the money alone. Every other part of the original judgment remains reversed. It seems to me that this is the only effect that would be given to this judgment in Kentucky. An examination of the state code of practice in civil cases, adopted in 1852, and all the supplements to it, though not offered in evidence, has not changed this conclusion. As there is no judgment in force relating to the Morristown property, the relief must be refused, so far as that is concerned.

No decree can be given for the recovery of the amount of money for which the judgment was eventually rendered in Kentucky, because there is no personal representative of Headley before the court, against whom such relief could be prayed for. Mrs. Headley may have been appointed executor of his will, with J. Boyd Headley, deceased. But it does not appear in the record or proceedings, that letters testamentary were granted to her, or that she ever acted as such. Her liability, like any other fact on which a decree is founded, must appear by the record, not by proof only. A recovery can only be had *secundum allegata et probata*. She was, individually, a party to the suit, so far as her right of dower was concerned; but the right to recover, on this judgment, does not survive as against her, and she has never been made a party, as executrix, so that she could have an opportunity to plead no assets, or any other defence peculiar to an executor.

Besides these, there are other fatal obstacles to a recovery in this suit, even had the original decrée in the Circuit Court remained without appeal, or been modified and affirmed on appeal, or been entered anew in the Circuit Court as modified by the Court of Appeals.

In the first place, the real property at Morristown, one of the principal subjects of the decree, being in this state, was not within the jurisdiction of the courts of Kentucky; they could make no decree that would affect, or in any way change, the title to it. It is a well settled principle of law in the decisions in England and this country, and acquiesced in by the jurists of all civilized nations, (and thus part of the jus gentium,) that immovable property, known to the common law as real estate, is exclusively subject to the laws and jurisdiction of the courts of the nation or state in which it is located. No other laws or courts can affect it. *Story's Confl. of Laws*, § 591. I find no case in which a statute, judgment, or proceeding in one country, has been held to affect such property when situate in another country, or beyond the jurisdiction of the sovereign or court making the statute or decree.

Courts of equity in England and America, by a long series of decisions from that of Lord Hardwicke in the case of *Penn* v. *Lord Baltimore*, 1 *Ves.* 444, to this time, have decreed the performance of contracts relating to lands without their jurisdiction. But in these cases it is admitted, as it was by Lord Hardwicke, that these decrees could not affect the land, but could only be enforced when the court had jurisdiction of the person of the defendant, and thus compel him actually to execute the conveyance. In such cases it is the conveyance, not the decree, that has effect. These decisions will be found collected in the notes, in the English and American editions, to *Penn* v. *Lord Baltimore*, in 3 *Leading Cases in Equity* 787.

A recovery in the courts of Kentucky in a real action to try the title of lands in New Jersey, or in an ejectment for the possesion, would be a perfect nullity; no action could be brought upon it here to obtain execution of it. It would be simply void. A decree to deliver possession of lands in New Jersey might be enforced by the courts of Kentucky; if in possession of the person of the defendant he could be imprisoned, or even subjected to *peine fort et dure* until he

actually delivered it. But such judgment would not be enforced by the courts of this state; it would be giving the jurisdiction, as to the right to real estate, to the courts of Kentucky, and leave to the courts of this state only the ministerial duty of executing these decrees. And the title to real estate in New Jersey could be tried in any state in which the owner chanced to travel, if suit was brought against him there, and a judgment in Texas that lands in New Jersey of an intestate dying in 1860, vested in his eldest son exclusively, would have to be executed here.

The enforcement of a decree by attachment is the putting it in execution; it is, in that case, the process of execution. The only effect of a foreign judgment is, that it entitles the plaintiff to a new decree, not to the process of the court of another state.

The judgment in this case, that the deed was void, was a judgment as to the title of lands in this state, which the Kentucky courts had no jurisdiction to make; and they had no jurisdiction to decree a conveyance or delivery of possession, founded on that decree. This differs from the case of a contract to convey lands, which is a personal obligation to be determined by any court having jurisdiction of the parties.

Nor is the general rule of law varied by the Federal Constitution, or the act of Congress, declaring that the records and judicial proceedings of the courts of any state, shall have such faith and credit given to them, as they had by law or usage in the courts of such state. Justice Story, in his Commentaries on the Conflict of Laws, § 609, says: " But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered, to pronounce the judgment, nor an inquiry into the right of the state to exercise authority over the parties or the *subject matter*, nor an inquiry whether the judgment is founded in, and impeachable for, a manifest fraud. The Constitution did not mean to confer any new power upon the states, but simply to regulate the effect of their acknowledged jurisdiction

over persons and things within their territory. It did not make the judgments of other states domestic judgments, but only gave a general validity, faith, and credit to them as evidence. No execution can issue upon such judgment, without a new suit in the tribunals of other states."

The Supreme Court of the United States in *D'Arcy* v. *Ketchum*, 11 *How.* 165; and the state courts in *Starbuck* v. *Murray*, 5 *Wend.* 148; *Shumway* v. *Stillman*, 6 *Ibid.* 447; *Gleason* v. *Dodd*, 4 *Metc.* 333; *Ewer* v. *Coffin*, 1 *Cush.* 28; *Aldrich* v. *Kinney*, 4 *Conn.* 380; *McKean* v. *Beedey*, 31 *Maine R.* 316; *Arndt* v. *Arndt*, 15 *Ohio* 33; *Moulin* v. *Insurance Co.*, 4 *Zab.* 222, and in many other cases, have held that the act of Congress gave no validity to judgments against a person not within the jurisdiction of the court that gave it, which, of course and *a fortiori*, would include any case in which the court had not jurisdiction of the cause or subject matter.

No case could be devised to illustrate the soundness of this position better than the present. Davis and Headley both resided in Morristown. Davis sold a house and lot there to Headley, for $9000; in payment, not in exchange, for which Headley conveyed to him one-sixth of two tracts of land in Kentucky, and agreed after five months, on a certain contingency, to convey certain other lands in Kentucky, and shares in a mining company. In a suit brought in Kentucky, while both parties resided here, for damages for failure in title of the lands conveyed, and non-performance of the contract to convey the other property, the Kentucky court declares the conveyance of the Morristown property to Headley void. No such judgment could have been rendered in New Jersey, or according to the law *rei sitae.*

A judgment in New Jersey could not change the title to lands in New York. Nor could a recovery in the Monmouth Circuit in ejectment, or any other action determined upon the title, affect the title to lands in Essex, or be enforced by an action brought in the county in which the lands are

situate. It would be void as the judgment of a court not having jurisdiction of the subject matter.

The Kentucky judgments must also be held void for fraud in obtaining them. That fraud will avoid a judgment of another state, is laid down by Story in the passage cited, and many other authorities. Courts of equity will set aside judgments of their own state, and of other states on this ground. *Moore* v. *Gamble*, 1 *Stockt.* 246; *Tomkins* v. *Tomkins*, 3 *Ibid.* 512; *Glover* v. *Hedges*, *Saxt.* 119; *Powers' Ex'rs* v. *Butler's Adm'r*, 3 *Green's Ch.* 465; *Pearce* v. *Olney*, 20 *Conn.* 544; *Dobson* v. *Pearce*, 2 *Kern.* (11 *N. Y.*) 156.

In Pearce *v.* Olney a judgment was obtained in New York, after fraud in violation of a promise to the defendant, that the suit should not be proceeded in without further notice to him. The court in Connecticut, for this fraud in obtaining the judgment, declared it void, and restrained further proceeding upon it; and this was held in Dobson *v.* Pearce, to be a valid defence in another action brought upon that judgment in New York.

In this case it is proved to my satisfaction, that Headley settled this suit in Kentucky with Davis in 1857, after which Davis, in fraud of that settlement, proceeded in Kentucky. That again in 1860, after Headley had appealed, another settlement was had, and that all subsequent proceedings, including the judgment in the Court of Appeals, and in the Circuit after the remittitur, were in fraud of that settlement, and without the knowledge or action of Headley. This fraud is of the same kind as that in Pearce *v.* Olney.

It is true, in this case fraud is set up in defence, in that it was in support of a suit to set aside the judgment, or rather to restrain further proceedings on it. But in a court of equity, this will make no difference; it will not lend its aid to enforce a judgment obtained by fraud, when that fraud is shown. The complainant must come with clean hands in the matter on which relief is sought.

The publicists make a distinction as between foreign judg-

ments when used in defence, to show that the matter sued for is *res adjudicata*, and when sought to be enforced by the courts of another sovereign. They hold that no court is bound to enforce a judgment of another sovereignty when it is apparently unjust and against universally acknowledged principles of right. *Story on Confl. of Laws*, §§ 593, 599, 618.

Besides the fraud in proceeding in this suit after the settlements, the record itself, which contains, as required by the code of Kentucky, the documents on which the suit is founded, shows that the cause of action on which the suit of Davis was based, was utterly without foundation in law or the principles of law and equity, as acknowledged in all countries and recognized as the jus gentium. This is so evident that it is impossible to avoid the conviction that these judgments in Kentucky must have been procured by fraud on the courts that authorized their entry, by concealing or misrepresenting the facts contained in the record when moving for the judgment.

The proceeding by which the title to the one-sixth of the fifteen hundred acre tract is alleged to be affected, was a suit begun after the conveyance to Davis, against Headley and one MacHenry, on two commercial endorsements of MacHenry, to which Headley was made a party, according to some law in Kentucky, because he owed MacHenry, and on an alleged promise of Headley to pay the notes endorsed by MacHenry, and an attachment prayed against Headley's land, because he was returned as a non-resident. Judgment was given in this suit against both, and the fifteen hundred acre tract sold to pay it. The title of Davis could not be affected by sale to satisfy a judgment in a suit begun after the conveyance to him, to which he was no party. The suit by which the title to the one thousand acre tract was alleged to be affected, was also begun after the deed to Davis, and without making him a party, and the judgment left an undivided fourth of the tract in Headley, more than sufficient to ensure the sixth conveyed to Davis unaffected by the decree, even if it could have affected Davis.

The only other stipulation on Headley's part, was one to convey one-sixth of an eight hundred acre tract, and a corporator's right in a mining company, joined in one article, which expressly provided that before he should be bound to convey either, Davis should pay him $545.63, which the petition admitted had not been paid, either by Davis or one Goodall, to whom the petition alleged Davis had agreed to look for it, but it stated no release from the condition that Headley need not convey until payment.

On such a record, no judgment could be obtained without fraud or imposition on the court. This fraud is a defence to the judgment. Had it been positively shown, by such proof as would overcome this presumption, that this error had been committed by the court by mistake or perverseness, it might not have affected the judgment in this collateral way.

The principles adopted by the Supreme Court of this state in *Munday* v. *Vail*, 5 *Vroom* 418, in giving effect to the judgment of one of its own courts of record, that the validity of the judgment would only be recognized so far as the pleadings would authorize it, would leave the judgments in Kentucky, as to the real estate, without effect. The petition and the amended petitions state no facts upon which, by any principle of law acknowledged any where, the deed to Headley could be pronounced void. And the law of this state, the *lex loci rei sitae*, controlled. The prayer is for judgment for $12,000 damages, and "all other proper relief." The last could only apply to relief warranted by the facts stated in the petition. It does not appear that any relief could ever be had by such prayer, under the Kentucky code, which, in § 118, pl. 4, requires that the plaintiff shall put in his petition, a demand of the relief to which he considers himself entitled; this requirement could not be complied with by a demand of "proper relief." The demand of a rescission in the reply could not cure this, as that code, § 13, declares that there shall be no reply, except to a counter claim or set off in the answer.

If the claim is thus narrowed down to the judgment for

$213.50. in money, this is a· mere money claim. for which there is no appropriate remedy·in a court of equity.    It is a simple debt, and I find no precedent of a claim on a·foreign or domestic judgment for money, being enforced in a court of equity.