NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4683-14T1

GREG and RENEE MATEJEK,

       Plaintiffs-Respondents,

   v.

MARTHA and GUY WATSON, JOAN
HOWARD, ALAN and ANNE MARIE
SHAPIRO,

       Defendants,

   and

CARLOS[1] and JEAN GILMORE,

       Defendants-Appellants,

   and

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION and
CLAREMONT HILLS PARCEL TWO
CONDOMINIUM ASSOCIATION,

       Defendants.

_____

|  |
|---|
| **APPROVED FOR PUBLICATION** |
| **March 3, 2017** |
| **APPELLATE DIVISION** |

       Argued December 6, 2016 — Decided  March 3, 2017

       Before Judges Fisher, Ostrer and Vernoia.

       On appeal from the Superior Court of New
       Jersey, Chancery Division, Morris County,
       Docket No. C-126-13.

_____

[1] Carlos Gilmore was improperly pleaded as Carl Gilmore.

William H. Mergner, Jr., argued the cause for appellants (Leary, Bride, Tinker & Moran, attorneys; Mr. Mergner and Adrian K. Cousens, of counsel and on the brief).

John M. Bowens argued the cause for respondents (Schenck, Price, Smith & King, LLP, attorneys; Mr. Bowens and Sandra Calvert Nathans, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

The New Jersey Spill Compensation and Control Act (the Spill Act), N.J.S.A. 58:10-23.11 to -23.24, renders "all dischargers [of contamination] jointly and severally liable for the entire cost of a cleanup." Magic Petroleum Corp. v. Exxon Mobil Corp., 218 N.J. 390, 394 (2014); N.J.S.A. 58:10-23.11g. The Spill Act also authorizes a private cause of action by a responsible party for contribution from other responsible parties. N.J.S.A. 58:10-23.11f(a)(2)(a). We consider in this appeal the viability of a suit by an alleged contaminator seeking the cooperation and involvement of other alleged contaminators in an investigation into the cause of and responsibility for an alleged contamination. Because we find nothing in the letter or spirit of the Spill Act that would preclude the issuance of such a remedy, we affirm.

The facts as found by the trial judge at the conclusion of a bench trial are relatively simple. Briefly, oil was discovered

on the surface of a tributary to Royce Brook in Hillsborough in 2006. In response, the New Jersey Department of Environmental Protection (NJDEP) removed five underground storage tanks, one from each of five adjoining condominium units. Other than visit the site a few months later to confirm the absence of oil in the tributary, the NJDEP took no further action and its file remained open, thereby constituting, as the judge found, a cloud on title to all five condominium units.

Approximately seven years after the removal of the tanks, and with the NJDEP still maintaining an open file, plaintiffs Greg and Renee Matejek — owners of one of the impacted units — filed a complaint against the owners of the other four units; they sought a judgment that would obligate all owners to participate in and equally share in an investigation and, if necessary, remediation of the property. The judge found that even though there was no evidence yet as to the precise source of the contamination, the fact that the NJDEP had removed all five tanks was sufficient to impose on the impacted parties the obligation "to participate in the investigation process." Consequently, the judge: ordered plaintiffs to retain the services of a licensed site remediation professional (LSRP) to investigate; directed the LSRP to render a report to the parties as to whether remediation was required; and, if remediation was

required, compelled the division of the costs equally among the five owners.

Only defendants Carlos and Jean Gilmore — owners of one of the five units — appeal. They argue: (1) plaintiffs lacked standing to bring an action to compel investigation and cleanup under the Spill Act; (2) the trial court lacked jurisdiction to enter the judgment in question; and (3) the Spill Act does not permit and the facts did not warrant the relief granted.

The Gilmores' challenge to the judgment chiefly relies on the lack of evidence that they caused, in whole or in part, the contamination that warranted the NJDEP's involvement. The judge recognized this but found the circumstances did not preclude imposition of an equitable remedy by which that evidence might be revealed. We agree. To be sure, plaintiffs' suit varies from what the Legislature likely anticipated when authorizing a private cause of action for contribution. But, as the judge recognized, the Spill Act's general approach has since been altered. Under the Site Remediation Reform Act, N.J.S.A. 58:10C-1 to -29, which became effective in 2009, the burden of completing a cleanup fell to private parties through retention of an LSRP. The former resolution of a spill cleanup — the NJDEP's issuance of a "no further action" letter — has been replaced by the rendering of findings by an LSRP who, upon

finding a site to be clean so advises the NJDEP, which may thereafter conduct its own confirmatory examination. According to the Gilmores, a responsible party would have standing to seek contribution or any other relief from other responsible parties only following the NJDEP's acceptance of the LSRP's findings. Through a similar analysis, the Gilmores argue the NJDEP possessed primary jurisdiction over the dispute.

We find no merit in the Gilmores' contentions. As the trial judge recognized, plaintiffs' title was encumbered and, if the Gilmores' arguments were sustained, plaintiffs would have no way to remove that encumbrance other than to solely bear the expense of investigation and remediation. We agree with the trial judge that such a scenario leaves plaintiffs with no adequate remedy at law. And we agree that, in such circumstances, a court may provide a remedy that fairly and justly alleviates the inequitable burden that a narrow interpretation of the Spill Act would impose.

Indeed, a court's equitable jurisdiction provides as much flexibility as is warranted by the circumstances:

> Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety in application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of

> every case and the complex relations of all the parties.
>
> [Sears Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411-12 (E. & A. 1938) (internal quotations omitted).]

The authority to issue a judgment that compelled the other owners' cooperation in the further investigation of the property arose from the maxim that equity "will not suffer a wrong without a remedy." See Crane v. Bielski, 15 N.J. 342, 349 (1954); In re Mossavi, 334 N.J. Super. 112, 121 (Ch. Div. 2000).

In addition, we reject the notion that another equitable maxim — "equity follows the law" — might arguably suggest that the reach of equity should be restrained by the Spill Act's limits for two essential reasons. First, as we have already observed, the practice of remediation appears to have been altered with the enactment of the Site Remediation Reform Act. In this case, the NJDEP maintains an open file — a fact that clouds plaintiffs' title — while leaving the dispersion of that cloud to the impacted property owners. Absent the crafting of an appropriate remedy, plaintiffs would have been left with the prospect of either doing nothing or proceeding on their own in gathering evidence necessary to seek contribution from other dischargers. This circumstance strongly suggests the need for a remedy that would fairly burden all the potential dischargers with an investigation into the actual cause, the remediation of

the property if necessary, and the fixing of responsibility for the discharge on those truly responsible.

Second, we do not interpret the Spill Act as being so narrow or ineffectual as to permit a private action only on proof that another caused contamination in whole or in part. The Legislature expressly welcomed a "liberal constru[ction]" of the Spill Act for "the general health, safety, and welfare of the people of this State." N.J.S.A. 58:10-23.11x. And the Supreme Court has recognized that the Spill Act was "not intend[ed] to prevent persons from seeking" adequate relief through other means in such matters. Magic Petroleum, supra, 218 N.J. at 407. At present, the facts suggest only that the tributary was contaminated in 2006. The NJDEP continues to maintain an open file but apparently has no intention of further investigating or remediating; it merely removed the tanks and charged the five property owners with the cost. Is it not in the best interest of the health, safety and welfare of the people to compel a further investigation? Rather than preclude or render unduly burdensome a greater examination into the situation through the adoption of a narrow interpretation of the Spill Act, we commend the trial judge's exercise of discretion in adopting an inventive solution — the necessity of which was compelled by all the relevant circumstances — in this particular situation.

In affirming the judgment under review, we assume the likelihood of additional litigation in the future, as did the judge when he observed that, "[i]n the event . . . additional remediation is required and the parties are not able to agree as to the allocation, new litigation may be initiated." The judge recognized the possibility that the parties might seek further adjustment of their rights depending upon the outcome of the investigation required by the judgment under review. By affirming that judgment, we also do not foreclose that possibility nor limit the scope of any future litigation or the potential issuance of a remedy for those property owners who may be exonerated by the investigation to follow.

We find insufficient merit in the Gilmores' remaining arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION