**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0765-19T1

ESTATE OF DIANNE PARTEE,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

LOREE JONES, and DIONNE
JONES,

      Defendants-Appellants/
      Cross-Respondents,

and

TAMMY GOODMAN-BYARS,

      Defendant.

_____

Argued September 14, 2020 – Decided November 13, 2020

Before Judges Mayer and Susswein.

On appeal from Superior Court of New Jersey, Chancery Division, Camden County, Docket No. C-000091-17.

Anne C. Singer argued the cause for appellants/cross-respondents.

Jeffrey P. Resnick argued the cause for respondent/cross-appellant (Sherman, Silverstein, Kohl, Rose & Podolsky, attorneys; Jeffrey P. Resnick, on the brief).

PER CURIAM

This matter arises from a dispute amongst family members concerning the family homestead in Philadelphia, Pennsylvania. Defendants, Loree Jones and her mother Dionne Jones, appeal the trial court's rulings that (1) the decedent, Dianne Partee (Loree's aunt and Dionne's sister), intended to sell her share of the house to Loree rather than gift the house to her; that (2) Loree owes $100,000 to plaintiff, the Estate of Dianne Partee (Estate), representing the fair market value of Dianne's share of the house; and that (3) the Pennsylvania deed is to be voided if Loree does not pay.[1] Defendants contend that the probate court has no jurisdiction to invalidate a Pennsylvania deed and erred in ruling that Loree owes $100,000 to the Estate.

After carefully reviewing the record in light of the applicable principles of law and equity, we affirm the trial court's ruling that Loree must compensate the Estate for the value of Dianne's share of the house. Although we agree the

---

[1] Because this appeal involves family members who share common surnames, we refer to them by their first names. We mean no disrespect by this informality.

probate judge lacks the jurisdictional authority to invalidate the Pennsylvania deed, we hold that the judge acted within his authority and discretion in determining that Dianne did not intend to transfer her interest in the house to Loree for no value, and that her Estate therefore is entitled to compensation.

The Estate cross-appeals the trial court's order dismissing its complaint alleging fraud, theft, conversion, breach of fiduciary duty, and undue influence. We also affirm that ruling.

## I.

Because the parties are familiar with the procedural history and facts concerning this intrafamilial dispute, we do not repeat the evidence adduced at trial except as necessary to provide background and context to the issues before us. Charles Smith and his wife purchased the house in 1959. They raised three daughters: Dianne, Dionne, and Deborah. Dianne and Dionne are twins. Charles Smith became the sole owner of the property in 2007 when his wife passed away. When Charles died in 2011, he bequeathed the house to his three daughters equally.

Deborah, who is disabled and lives in a nursing home, deeded her interest in the property to her twin sisters on January 19, 2017. That transfer is not in dispute. On the same day, the twin sisters again transferred the property so that

A-0765-19T1

it was solely in Dionne's name.  The second deed transfer was not notarized, however, until May 11, 2017.  On June 19, 2017, Dionne deeded the property to her daughter Loree.

Dianne passed away on June 25, 2017.  Her Estate filed a six-count complaint against both Loree and Dionne, as well as the notary who endorsed all of the above-mentioned transactions,[2] alleging fraud, theft, conversion, breach of fiduciary duty, false swearing, and undue influence.

Defendants moved to dismiss the complaint claiming that the New Jersey Superior Court lacked jurisdiction.  The first judge to hear the matter, Judge David M. Ragonese, denied the motion.  He concluded that New Jersey had personal jurisdiction since the alleged torts, undue influence and fraud, purportedly took place in this State.  Judge Ragonese further reasoned that the relief plaintiff sought was not to order Pennsylvania authorities to take action on the deed.  Rather, the relief was "directed to parties who are subject to personal jurisdiction and compelling them to take specific action which a court of equity is entitled or permitted to do . . . ."  We note that the Estate withdrew the portions of its complaint seeking to void the deed but continued to seek

---

[2]  The notary never answered the initial complaint.  Plaintiff's request for entry of default judgment against her was granted on January 22, 2020.  She is not a party in this appeal.

monetary damages and "[s]uch other relief as this Court deems to be just and proper in the circumstances presented."

Judge Donald J. Stein conducted a bench trial over two non-consecutive days in February and May of 2019. Both parties offered testimony from multiple witnesses as to whether Dianne wanted to sell or gift the house. Two independent witnesses testified that Dianne intended to sell the property to her niece. The judge also considered emails exchanged between Loree and Dianne's son, Mario, regarding the fair market value of the property. Judge Stein reasoned that such correspondence would have been unnecessary if the property had been transferred to Loree as a gift. Judge Stein further noted Loree had email exchanges with Dianne,[3] suggesting that the property would not be given to her for free.

At the conclusion of the trial, Judge Stein found "with respect to these frauds, conversion, undue influence, fiduciary duty, I think that the parties are really in equipoise with these issues." The judge nonetheless found Dianne did not intend to give away her interest in the house. The judge further noted that under Pennsylvania law a deed is void if not filed within ninety days. In this

---

[3] Neither side disputes that Mario wrote the emails and sent them from his own email account, and that he signed them purportedly on behalf of his mother Dianne.

A-0765-19T1

instance, the deed transfer from both Dianne and Dionne to Dionne's sole possession, which the defendants posit was executed on January 19, 2017, was not even notarized until May 11, 2017—well beyond the ninety-day requirement. The judge further observed that if the notary had indeed mis-dated her stamp and deliberately represented otherwise to the Pennsylvania Recorder of Deeds, such actions would be construed as a fraud upon the State. Accordingly, the judge held that the deed from Dionne to Loree was invalid under Pennsylvania law. Defendants offered an explanation for the delay in notarizing and filing the deed—that is, the need to produce official birth certificates for both Loree and Dionne. The judge did not accept that explanation. Judge Stein also found it suspect that the transfer to Loree was done in two steps.

Judge Stein ultimately concluded that Loree owed $100,000 to the Estate.[4] He ruled that in the event Loree failed to pay the ordered sum, the deeds transferring ownership in the property would be deemed void, which would then result in joint ownership of the property between the Estate and Dionne.

---

[4] The parties also disputed the fair market value of the property. The trial court's valuation was based on testimony from two realtors, the home inspection report outlining structural repairs to be done to the home, and the money Loree spent rehabilitating the house. Judge Stein concluded the house, in the "as is" condition at the time of transfer to Loree, was valued at $200,000.

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411–12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Accordingly, an appellate court should not disturb the trial court's factfinding unless the court is "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

In contrast to the deference we give to a trial court's factual findings, "[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Chancery courts, moreover, have broad latitude to set equitable remedies. "[A] court's equitable jurisdiction provides as much flexibility as warranted by the circumstances," Matejek v. Watson, 449 N.J. Super. 179, 183 (App. Div. 2017), and "equity 'will not suffer a wrong without a remedy,'" Ibid. (quoting Crane v. Bielski, 15 N.J. 342, 349 (1954)). Rather:

A-0765-19T1

> Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety in application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.
>
> Ibid. (quoting Sears Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411–12 (1938)).

In the same vein, "a court of equity should not permit a rigid principle of law to smother the factual realities to which it is sought to be applied." Grieco v. Grieco, 38 N.J. Super. 593, 598 (App. Div. 1956). Indeed, equity "regards as done that which ought to be done." Graziano, 326 N.J. Super. at 342 (citing Roberts v. Roberts, 106 N.J. Super. 108, 109 (Ch. Div. 1969), and Wohlegmuth v. 560 Ocean Club, 302 N.J. Super. 306, 312 (App. Div. 1997)).

We are satisfied the judge fashioned an appropriate equitable remedy in an effort to keep the family relationship from further deterioration. Notably, the evidence presented was sufficient for the trial judge to have found that Dianne did not intend to gift her share of the house without having to find that her sister and niece committed theft or fraud under the "clear and convincing" standard. It bears emphasizing that the Estate is not seeking possession of the property. It

only seeks to recover the value of Dianne's interest at the time of the transfer to Loree. As a result, the judge concluded the parties were returned to the same position and divided the fair market value of the house between the twin sisters.

Loree and Dionne contend that the probate court's judgment rests solely on its determination the deed is invalid. We disagree. We do not dispute that as a general matter, a court of one state may not interfere with land transactions in a different state. See Lindley v. O'Reilly, 50 N.J.L. 636, 642 (1888) ("[T]he courts of one state or country are without jurisdiction over title to lands in another state or country."). In Davis v. Headley, the New Jersey court held a Kentucky court had no jurisdiction to order a deed given for lands in New Jersey was void. 22 N.J. Eq. 115, 121 (N.J. Ch. 1871). New Jersey courts have consistently held the same. See Bullock v. Bullock, 52 N.J. Eq. 561, 561 (1894) ("The jurisdiction acquired by the courts of one state over parties to an action incidentally affecting lands in another state is a jurisdiction purely in personam; the decree of judgment in such action cannot have any extraterritorial force in rem."); Vreeland v. Vreeland, 49 N.J. Eq. 322, 326 (1892) (holding courts of one state lack jurisdiction over title to land in another state).

We believe the crux of this case, however, is not whether the deed was valid, nor whether a New Jersey court has the authority to void that deed. Nor

does the outcome hinge on a finding that Loree or Dionne used wrongful tactics to trick Dianne into ceding her interest in the homestead. We believe the critical finding is that Dianne did not intend to give away her share of the house for no value. That conclusion is supported by adequate, substantial, and credible evidence. In those circumstances, applying equitable principles, the probate court acted appropriately and within the wide latitude of its discretion to order Loree to compensate the Estate for one-half the fair market value of the house.

Any remaining arguments raised by Loree and Dionne lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

## II.

We next address the Estate's cross-appeal. The Estate contends the trial court erred in dismissing the allegations of fraud, theft, conversion, breach of fiduciary duty, and undue influence.[5] This contention lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E).

A party must prove these allegations by clear and convincing evidence. See Barsotti v. Merced, 346 N.J. Super. 504, 520 (App. Div. 2002). After

---

[5] The Estate acknowledges in its reply brief that it withdrew the undue influence claim during trial "because it was clear as the case progressed that Dianne Partee never agreed to give away her share of the property. Thus, she was not unduly influenced—despite defendants' best efforts."

hearing all of the testimony and evidence, the trial court assessed witnesses for both sides and found "the parties are really in equipoise with these issues."

As noted, we accept findings by the trial court that are "supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 412. "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We decline in this case to second-guess the trial court's conclusion that the Estate failed to prove fraud, theft, conversion, or breach of fiduciary duty by clear and convincing evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION