**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0893-24

STANISLAW SMIALEK,

    Plaintiff-Appellant,

v.

IRENE GORGON and ZBIGNIEW
GORGON,

    Defendants-Respondents.

_____

Submitted March 9, 2026 – Decided April 10, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000158-19.

Chioma Nelson, PC, attorney for appellant (Chioma Nelson, on the briefs).

Michael C. Schonberger, LLC, attorneys for respondents (Michael C. Schonberger, of counsel and on the brief).

PER CURIAM

Plaintiff Stanislaw Smialek is defendant Irene Gorgon's brother and defendant Zbigniew Gorgon's uncle. They each are one-third co-owners of a multi-unit apartment building located in Jersey City. Despite partition litigation spanning multiple years, the parties have been unable to resolve their differences concerning the management or sale of the property notwithstanding consent orders that established procedures for the listing and selling of the property and a methodology for distributing the proceeds. Following multiple motions, repeated noncompliance with orders, missed deadlines, and disputes over rental income, the Chancery court appointed a receiver to manage the property and effectuate its sale. The court also entered several orders during the litigation including requiring an escrow account for the anticipated sale proceeds, awarding attorney's fees to defendants, and denying plaintiff's request to consolidate the action with a related action pending in the Law Division. Plaintiff appeals from these orders, challenging the trial court's exercise of its equitable powers and management of the partition proceedings. Having considered the arguments in light of the record and applicable legal principles, we affirm all the Chancery court's orders.

A-0893-24

I.

In 1999, plaintiff purchased a multi-unit building located on Seventh Street in Jersey City. He used his own funds for a $100,000 downpayment and secured a mortgage for the remainder of the purchase price of the property. At the time of closing, for reasons unclear in the record, plaintiff placed defendants' names on the deed. Since acquiring the property, plaintiff alleges he has exclusively paid all utilities, taxes, insurance, and maintenance costs without any monies from defendants. Further, all the parties continued to reside at the property without defendants having to pay rent while their relationship deteriorated over several years.

Plaintiff commenced the litigation by filing a complaint for partition in the Chancery Division in September 2019. Plaintiff sought a fair partition or sale of the property, the equitable distribution of proceeds and an accounting to determine credits/debits for expenditures and contributions made on the property since its acquisition. Defendants filed an answer in January 2020 and an amended answer in October 2020. Their answer demanded a fair share of the property and asserted claims against plaintiff, including wrongfully collecting and retaining rent payments from tenants and not accounting for the payments. In April 2021, the court entered partial judgment establishing that each of the

A-0893-24

parties owned a one-third interest in the property, which we affirmed on appeal on June 29, 2022.[1]

In April 2023, the court executed a consent order submitted by the parties that intended to govern the future management and sale of the property. The consent order stipulated that the property would be listed for sale with specified brokers, set out standard procedures for marketing the property, collecting and depositing rental income, and requiring the parties' cooperation and approval for any property sale. Additionally, the order provided upon sale, the proceeds would first be applied to outstanding taxes, fees, and other costs, while the balance would be held in escrow pending a final resolution of the parties' competing claims for set offs or credits.

In August 2023, defendants moved to enforce the consent order to require plaintiff to execute a broker's listing agreement and establish a joint checking account for the property's rent receipts, which was denied as moot in September 2023 after plaintiff allegedly complied with the consent order. Defendants later moved for reconsideration, which the court granted and ordered plaintiff to comply with the consent order by executing the listing agreement with the agreed upon broker in November 2023. Additionally, defendants' request for

---

[1] Smialek v. Gorgon, No. A-3193-20 (App. Div. June 29, 2022).

attorney's fees was denied without prejudice with the court noting in the order that if any further enforcement motions were granted, attorney's fees may be awarded.

In February 2024, the listing agreement expired without a sales contract, although there were offers for the property ranging from $1.1 to $1.5 million. Thereafter, defendants moved to compel plaintiff to sell the property for the $1.5 million based on the highest prior offer. Plaintiff cross-moved to retain the property through a buyout of defendants' interests. On May 24, 2024, the court granted plaintiff the opportunity to buy out defendants' interests in the property based on the market value of $1.5 million, while permitting him to retain his one-third interest of $500,000, provided he could secure mortgage financing and proof of funds by July 1, 2024. Defendants moved for reconsideration, which the court denied.

Plaintiff was unable to secure financing for the buyout. He attributed this failure to defendants accosting and threatening his lender's appraisers while they inspected the property, which inhibited the appraiser's ability to complete the appraisal. Because of defendants alleged non-cooperative behavior, plaintiff moved to compel defendants to allow the lender's appraiser to access the property, which the court granted on June 13, 2024. The order directed

5

defendants to grant the appraiser access to the property and refrain from obstructing plaintiff's efforts to obtain a mortgage. Additionally, the order maintained the same deadline of July 1, 2024, requiring plaintiff to show proof of mortgage funding for the purchase price.

On June 20, 2024, the court issued an additional order amending its prior order requiring plaintiff to fund an escrow account in the amount of $1.5 million from his refinance "pending the outcome of the offset trial." The court found the purpose of the additional order was to preserve defendants' ability to recover monies owed to them from plaintiff at the credit and set off hearing. The court also noted it intended to maintain the July 1 sale deadline but left open the possibility of an extension depending on the reasons provided for any further extension requests.

On July 19, 2024, defendants' counsel emailed a letter to the court informing it that the funding deadline for plaintiff passed without compliance. The letter also informed the court that plaintiff reached an apparent agreement with a new tenant to occupy one of the units in the building, without giving notice to them or obtaining court approval despite prior orders that outlined these requirements. On September 27, 2024, arguments were held to determine four pending motions before the court, including: (1) plaintiff's order to show

6

cause requesting certain injunctive relief filed on July 24, 2024; (2) defendants' motion to enforce litigant's rights filed on July 31, 2024; (3) plaintiff's cross-motion opposing defendants' motion to enforce litigant's rights; and (4) plaintiff's second application for an order to show cause requesting additional injunctive relief in order to effectuate the purchase of the property, filed September 12, 2024. All motions related to the parties' compliance with court orders pertaining to the sale or buyout of the property.

Plaintiff's initial order to show cause alleged he was unable to secure a mortgage commitment for the buyout due to defendants' non-cooperation. Plaintiff also submitted a copy of his temporary restraining order arising from an incident with defendant Irene Gorgon on June 23, 2024. Additionally, plaintiff sought a declaratory judgment against defendants' counsel for violating Rules 8.3 and 8.4 of the Rules of Professional Conduct for failing to deter defendants' delay tactics surrounding the appraisal and requesting that counsel be removed from the case.

Defendants' motion to enforce litigant's rights requested that the court: (1) compel plaintiff to execute a third-party contract of sale; (2) compel plaintiff to pay costs associated for relocation of the tenant allegedly leasing an unoccupied unit without prior permission; (3) prohibit plaintiff from leasing any other

7

vacant units of the property; and (4) award defendants' counsel legal fees for the present motion. Plaintiff's cross-motion requested that the court: (1) compel defendants to produce copies of any existing Medicaid liens, as previously ordered by the court to sign all documents at closing; (2) compel defendants to vacate the property after closing; and (3) enforce plaintiff's right to purchase the subject property by private sale.

Plaintiff's second order to show cause requested the court grant him a limited power of attorney to effectuate the signing of a deed on behalf of defendants for the closing of the property. Plaintiff alleged that but for the obstructive tactics by defendants, he is ready and able to close on the property. The court denied both of plaintiff's orders to show cause in all respects, finding he did not establish the Crowe[2] factors by clear and convincing evidence. The court determined its order was clear on the actions plaintiff was required to undergo to effectuate the buyout of the property.

Further, the court noted that it had restated the terms of the order at the hearing on September 16, 2024, specifying that plaintiff had until September 19, 2024, to provide proof of buyout funds, which plaintiff failed to accomplish. The court determined even if plaintiff's allegations were true, the factual record

---

[2] Crowe v. De Gioia, 90 N.J. 126 (1982).

A-0893-24

failed to establish plaintiff provided verified proof of funds or deposited the required funds into an escrow account by the deadline. The court denied plaintiff's second order to show cause finding plaintiff failed to comply with the requirement to fund an escrow account in the amount of $1.5 million, thus he failed to show either a substantial, immediate, or irreparable injury, or to provide a probability of ultimate success on the merits.

Addressing the remaining applications, the court granted defendants' motion to enforce litigants' rights. The court recounted plaintiff originally agreed to a third-party sale by way of a consent order, then subsequently, based on his request, it permitted either party the opportunity to retain ownership of the property through a private buyout sale if certain requirements were satisfied. The court highlighted plaintiff's failure to provide any proof of funds and found there were insufficient reasons to delay listing the property for sale. The court further found plaintiff violated the court's order that required him to seek court approval prior to renting any units. Additionally, the court granted defendants' request to prohibit plaintiff from leasing any units and for plaintiff to pay for the relocation of the tenant that began leasing the unit without the court's permission.

A-0893-24

Lastly, the court determined the property should be assigned to a rent receiver. The court outlined the responsibilities of the rent receiver, denied plaintiff's cross-motion to enforce litigants rights, and found that it was appropriate to award defendants legal fees for their enforcement motion. On the same date as arguments, the court issued a written order granting defendants' request for legal fees and on September 30, 2024, the court issued a written order appointing the rent receiver as part of its granting of enforcement of litigant's rights.

Plaintiff filed a motion for reconsideration on October 3, 2024. In addition, on October 11, 2024, plaintiff filed a motion to consolidate the Chancery matter with a separate matter filed in February 2024 by defendants in the Law Division.[3] The Law Division initially dismissed the complaint because defendants were indispensable parties, thereafter the matter was moved to be reinstated with an amended complaint including the proper parties.

On November 8, 2024, the court heard oral argument on plaintiff's pending motions. Before entering its findings, the court noted that the rent receiver sent a letter to plaintiff stating that plaintiff had not complied with the terms of the

[3] The matter was initiated by George Gorgon, the legal guardian of defendant Zbigniew; Gorgon v. Smialek, No. HUD-L-0641-24.

A-0893-24

September 30, 2024, order and that the receiver intends to take action against him and the property. The court also appointed a receiver with full powers to manage the property, finding it had the discretion to appoint a receiver to force compliance by the parties because based on their failure to comply with its orders. Concerning plaintiff's motion to consolidate, the court found while there were some shared questions of law and fact, consolidation at the current stage of the matter would be inappropriate and would only complicate the issues.

Addressing plaintiff's motion for reconsideration, the court concluded that it previously found both orders were appropriate and declined to reconsider the orders under Rule 4:42-2. The court also granted defendants' request for counsel fees awarding them $4,425. The court found plaintiff violated orders by failing to request approval from the court for the new renter and failing to cooperate with the appointed receiver. On the same date, the court issued written orders denying plaintiff's motion to consolidate and denying plaintiff's motion for reconsideration of the September 30, 2024, order.

Plaintiff appeals from several orders of the court spanning between June 20, 2024 and November 14, 2024. He contends that the court erred (1) by appointing a receiver; (2) by requiring him to fund an escrow account in the

11

A-0893-24

amount of $1.5 million; (3) in awarding attorney's fees to defendants; and (4) by denying consolidation with the Law Division matter.

II.

Initially, we set forth the legal principles that guide our analysis. "[T]he facts the [court] adopts in an equity case are entitled to deference 'when supported by adequate, substantial[,] and credible evidence.'" Tarta Luna Props., LLC v. Harvest Rests. Grp. LLC, 466 N.J. Super. 137, 153 (App. Div. 2021) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "In fashioning relief, the Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case." Marioni v. Roxy Garments Delivery Co., 417 N.J. Super. 269, 275 (App. Div. 2010).

> Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety in application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.
>
> [Matejek v. Watson, 449 N.J. Super. 179, 183 (App. Div. 2017) (quoting Sears Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411-12 (E. & A, 1938)).]

A-0893-24

Generally, we review an order appointing a receiver under an abuse-of-discretion standard. See N.J. Realty Concepts, LLC v. Mavroudis, 435 N.J. Super. 118, 123 (App. Div. 2014); see also Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C., 365 N.J. Super. 241, 249 (App. Div. 2003); Roach v. Margulies, 42 N.J. Super. 243, 246 (App. Div. 1956).

We also review a court's order enforcing litigant's rights under Rule 1:10-3 for abuse of discretion. Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018) (citing Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011)). "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 459 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"The decision to award counsel fees 'rests within the sound discretion of the trial court.'" Ibid. (quoting Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003)). We "will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). We afford trial

courts "considerable latitude in resolving fee applications." Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012).

We review de novo "[a] trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

## A.

We initially address plaintiff's contention that the trial court erred by appointing a receiver for the property because this form of relief is an "extraordinary remedy" that should only be granted if the court follows specific procedures, including allowing a party the opportunity to present evidence, especially in cases where there is a dispute about the underlying facts or need for a receiver. He argues that the court relied on contested allegations without making proper evidentiary findings or demonstrating that other less restrictive remedies had been exhausted. Plaintiff asserts the court's order appointing a receiver was an abuse of discretion.

"[T]he power [of the Chancery Court to appoint a receiver] has long been recognized. . . ." Smith v. Smith, 138 N.J. Eq. 463, 464 (Ch. 1946); see also Freeth v. Rule, 118 N.J. Eq. 285, 286 (E. & A. 1935) (noting that in a partition

14

action, "[t]he right to appoint a receiver [is] incident to the ancient jurisdiction of the Court of Chancery").

"The appointment of [a] receiver is an extraordinary remedy and involves the delicate exercise of judicial discretion." Ravin, 365 N.J. Super. at 249 (quoting First Nat'l State Bank v. Kron, 190 N.J. Super. 510, 513 (App. Div. 1983)). Notably, "[t]he power has been cautiously exercised particularly where the application rests merely upon the existence of a belligerent relationship between the co-tenants and their consequent [inability] to agree upon the management of the lands." Smith, 138 N.J. Eq. at 464.

> [A] receiver will ordinarily be appointed in a partition suit where . . . the tenant in possession acquires the rents, issues, and profits of the lands and refuses to furnish his co-tenant with an accounting and is evidently appropriating the income to his own individual use. Indeed, a receiver might properly be appointed in other circumstances in which the misconduct of the tenant in possession occasions a justifiable apprehension of imminent and irreparable injury to the clear rights of the co-tenant.
>
> [Id. at 464-65 (emphasis added).]

We are not persuaded by plaintiff's contention that the court erred by appointing a receiver because there were contested issues of fact concerning his lack of compliance. The record demonstrates that the court appointed a receiver after years of hotly contested litigation between the parties, repeated motions to

compel compliance with orders—including the enforcement of a consent order—and violations of several other court orders. Given this context, the court found that the appointment of a receiver was necessary to protect the parties' respective interests in the property, in order to manage its operations objectively, and to effectuate its ultimate sale. The misconduct by plaintiff was aptly supported by the record and did not require an evidentiary hearing as there were not any genuinely contested facts requiring such. We concur with the trial court that without the appointment of a receiver there was a significant risk of imminent and irreparable injury to the rights of defendants, and the court's appointment of a receiver was not an abuse of discretion.

B.

We now turn to plaintiff's contention that the court erred by requiring him to fund a $1.5 million escrow account as a condition of buying out the property. Plaintiff argues the court abused its discretion because it was fundamentally illogical as his one-third interest in the property had already been determined and not crediting that amount against the $1.5 million value was error because it made it difficult if not impossible for him to secure financing. He further contends that the order did not account for the timeline or the actual ability to secure such funding in the context of a partition sale, and that the escrow amount

16

was not tied to any evidence regarding the parties' competing setoff claims, making the requirement arbitrary and an abuse of discretion.

We are not persuaded by these arguments. As previously noted, an equity court has broad and flexible powers to devise and shape remedies to fit the evolving circumstances of a given case and the complex relationship of the parties. Here, the $1.5 million escrow was set based upon the anticipated sale price of the property, as supported by prior third-party offers, and to ensure that funds would be available to satisfy any potential offset, credits, or adjustments resulting from the setoff trial. The record reflects that the court provided plaintiff with multiple opportunities to retain the property even though the consent order he agreed to did not permit such a buyout. The amount required to be placed in escrow was tied to the highest offer and was reasonable based on the credits and debits the parties were claiming against the other that had not yet been determined. Accordingly, we conclude the trial court's order requiring a $1.5 million escrow to be funded by plaintiff fell within the court's broad discretionary authority in order to protect all parties' rights pending final resolution.

A-0893-24

## C.

We next address plaintiff's contention that the court's award of attorney's fees to defendants was improper because it was not based on any actual violation of a court order and was unsupported by the evidence in the record. Plaintiff contends that while courts of equity have discretionary authority to grant attorney's fees, those awards should be limited to situations where there is a clear showing that a party has failed to comply with a prior order or has acted in bad faith. He asserts his inability to fully comply with court orders was due to factors such as lack of clarity in the orders and obstructive conduct by defendants, rather than willful noncompliance or misconduct by him, and thus, the fee award constituted an abuse of discretion. We disagree.

"Judges have broad discretion in determining when, whether, and under what circumstances attorneys' fees should be awarded." Desai v. Bd. of Adjustment of Phillipsburg, 360 N.J. Super. 586, 598 (App. Div. 2003) (citations omitted). We may reverse an award of attorney's fees "when the court's decision 'was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Hansen v. Rite Aid Corp., 253 N.J. 191, 212 (2023) (quoting Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016)).

The consent order entered April 18, 2023, and agreed to by plaintiff, specifically included a provision that an attorney's fee may be assessed if the court was required to enforce its terms. This provision was later reinforced by the court, when it denied defendants' request for attorney's fees in their November 2023 motion for reconsideration, where the court explicitly stated that "[i]f any motion practice is required to enforce this [consent] order, attorney['] fees will be awarded for this application and for any further motion practice." The record reflects plaintiff's documented history of noncompliance, including obtaining a new tenant without prior notice to defendants and without approval by the court as ordered, and for his failure to cooperate with the rent receiver as ordered.

Concerning the amount of the fee, the court determined the award of $4,425 in attorney's fees to defendant was tied to the additional work and costs incurred by defendants because plaintiff's conduct necessitated further motions to enforce the consent order. The amount awarded was accompanied by a proper certification of the services rendered, which the court found reasonable and proportionate to the work performed. See R. 4:42-9(b). We agree with the trial court's finding that the certification of counsel was reasonable in both the time allotted for the services as well as the hourly rate charged. Accordingly, we

19

conclude the record amply supports the court's attorney's fees award to defendants, which was an appropriate exercise of its discretion.

D.

In his last point on appeal, plaintiff contends that the court abused its discretion by denying his request to consolidate the matter with a pending Law Division case involving the same parties that contained overlapping factual and legal issues concerning the disputed property. He argues that consolidation and transfer were appropriate under Rule 4:38-1, as both actions arose from the same series of transactions and presented common questions regarding the parties' property interests and related claims for accounting and contribution. Plaintiff further asserts that keeping the matters separate resulted in inefficiency and the risk of inconsistent or fragmented outcomes, and that consolidation would promote judicial economy and fairness.

A decision "to grant or deny a party's motion to consolidate actions is discretionary." Moraes v. Wesler, 439 N.J. Super. 375, 378 (App. Div. 2015); see also R. 4:38-1(a) ("When actions involving a common question of law or fact arising out of the same transaction or series of transactions are pending in the Superior Court, the court on a party's or its own motion may order the actions consolidated.").

20

The Chancery matter had been pending for a significant period of time at the time the Law Division matter was initiated, and the court had already entered multiple orders regarding the case. Those orders addressed multiple issues including: (1) the appointment of a receiver; (2) detailed directives for the sale of the property; (3) buyout rights for the others' respective interest in the property; and (4) multiple directives as a result of the parties' disputes. The record shows the Chancery action was at a much later stage than the Law Division matter and had already set forth an order for the sale and distribution of proceeds for the property and was awaiting an evidentiary hearing concerning credits and offsets. In addition, the Law Division matter, although involving some overlapping claims with the Chancery matter, also made distinct legal claims based on separate factual issues from the Chancery matter. The court specifically recognized these procedural differences and found that consolidating the two actions at such a late stage of the Chancery proceeding "would not be appropriate and would only complicate the issues." We see no reasons to disturb the trial court's determination, which we conclude was not an abuse of discretion, as the court had presided over the matter for several years prior to the filing of the consolidation motion and based its decision on substantial evidence in the procedural record.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0893-24